[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2021-Ohio-1171.]

# IN THE COURT OF APPEALS
# TENTH APPELLATE DISTRICT OF OHIO
# FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| CALYPSO ASSET MANAGEMENT, LLC, | : | APPEAL NOS. 20AP-122 |
| | | 20AP-124 |
| and | : | TRIAL NO. 15CV4446 |
| ALTERRA REAL ESTATE ADVISORS, LLC, | : | *O P I N I O N.* |
| | : | |
| Plaintiffs-Appellees/Cross-Appellants, | : | |
| | : | |
| vs. | | |
| 180 INDUSTRIAL, LLC, | : | |
| Defendant-Appellant/Cross-Appellee, | : | |
| | : | |
| and | : | |
| CALYPSO DISTRIBUTION SERVICES, LTD., d.b.a. CALYPSO LOGISTICS, | : | |
| Defendant. | : | |

Civil Appeals From: Franklin County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: April 6, 2021

*Brunner Quinn, Rick L. Brunner* and *Patrick M. Quinn*, for Plaintiffs-Appellees/Cross-Appellants,

*Carpenter Lipps & Leland LLP* and *David A. Wallace*, for Defendant-Appellant/Cross-Appellee.

**CROUSE, Judge.**

{¶1} This is the third appeal regarding the failed business transaction between plaintiff-appellee/cross-appellant Calypso Asset Management, LLC, ("CAM") and defendant-appellant/cross-appellee 180 Industrial, LLC, ("180"). In this appeal and consolidated cross-appeal, the parties challenge the trial court's award of attorney fees and costs. For the following reasons, we reverse the trial court's judgment and remand the cause to the trial court.

## I.    *Facts & Procedure*

{¶2} CAM and 180 have been in a dispute regarding a failed sale-leaseback deal since 2015. CAM intended to purchase a logistics company and the property used to operate the company from defendant Calypso Distribution Services, Ltd., ("Calypso"). CAM sought to finance the transaction by entering into a sale-leaseback agreement for the property with 180. CAM hired plaintiff-appellee/cross-appellant Alterra Real Estate Advisors, LLC, ("Alterra") as a real-estate broker for the sale-leaseback transaction.

{¶3} During the sale-leaseback agreement's due-diligence period, 180 sent CAM a contingency letter which identified numerous improvements that would need to be made before closing. When the letter failed to yield a satisfactory response, 180 attempted to restructure the terms of the sale-leaseback agreement. CAM rejected the proposed restructuring, and the deal fell apart.

{¶4} In late 2014, CAM and 180 entered into a settlement agreement. The settlement agreement discharged any claims arising from or related to the sale-leaseback transaction. The settlement agreement also contained a fee-shifting provision, which provided: "If any action is brought to enforce this Agreement, or is brought in connection with any dispute arising out of this Agreement or the claims that are the subject of this Agreement, the prevailing Party shall be entitled to recover damages, attorney's fees, and

other costs incurred in such litigation * * * [.]" Alterra was not a party to the settlement agreement.

{¶5} After CAM and 180 executed the settlement agreement, Calypso entered into a similar sale-leaseback transaction with Triple Net Acquisitions, LLC, ("Triple Net"). Although the exact affiliation is unclear from the record, Triple Net and 180 shared a chief operating officer—Bryan Norton. In spring 2015, CAM discovered the sale-leaseback transaction between Calypso and Triple Net, and filed suit with Alterra against 180.[1] CAM contended that the settlement agreement resulted from fraudulent inducement, and thus, was void. CAM also asserted a substantive claim of fraud, and with Alterra, asserted claims for breach of contract and tortious interference with a business and contractual relationship.

{¶6} In July 2015, 180 moved for summary judgment. On March 29, 2016, the trial court granted the motion for summary judgment. The court found that 180 had not induced CAM into entering the settlement agreement, and thus, it was enforceable. Accordingly, the court found that the settlement agreement barred CAM's claims against 180. The court also found that Alterra had no cognizable relationship with 180 to support its breach-of-contract and tortious-interference claims.

{¶7} The trial court concluded that 180 was the prevailing party and could move for an award of attorney fees under the settlement agreement's fee-shifting provision. 180 subsequently moved for $50,563.05 in attorney fees and costs. 180 supported its request with copies of billing records and expert testimony. Following a fees hearing, the trial court awarded $30,599.44 in attorney fees and costs. Dissatisfied with the amount awarded, 180 moved for reconsideration. After the trial court denied reconsideration, 180 appealed.

---

[1] CAM and Alterra also named Calypso as a defendant, but dismissed those claims prior to this appeal.

3

{¶8} That first appeal was ultimately dismissed on jurisdictional grounds. Following briefing and oral arguments on the merits, this court sua sponte found that the appeal was premature. Prior to filing the first appeal, 180 had moved for sanctions under R.C. 2323.51. When the first appeal was pending, the motion for sanctions remained pending in the trial court. This court found that based on the case's unusual posture, the finality of the trial court's order was "less clear." However, the court decided, "As the current case is postured, principles of judicial economy and policy considerations that disfavor piecemeal and duplicative appeals support a finding that the current appeal is premature[.]" Thus, this court dismissed the appeal for lack of a final appealable order.

{¶9} In its motion for sanctions, 180 argued that CAM, Alterra, and their shared counsel had engaged in frivolous conduct under R.C. 2323.51 by filing the underlying complaint. 180 sought an order requiring CAM, Alterra, and their counsel to jointly and severally pay the attorney fees and costs incurred by 180. 180 again supported its request with copies of billing records and expert testimony regarding the reasonableness of the fees sought. Following a sanctions hearing, the magistrate found that CAM, Alterra, and their counsel did not engage in frivolous conduct, and denied 180's motion for sanctions. 180 objected. The trial court agreed with the magistrate's conclusions and overruled 180's objections. Having resolved the motion for sanctions, 180 again appealed.

{¶10} In the second appeal, this court addressed the award of attorney fees which 180 claimed to have been arbitrarily determined and unreasonably low. *Calypso Asset. Mgt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 28 (10th Dist.) ("*Calypso II*"). We found that "the trial court did not perform the first step of the lodestar method," and instead, "summarily concluded" that $30,000 was reasonable. *Id.* at ¶ 30. This court also addressed the denial of 180's motion for sanctions. We found that CAM and its counsel engaged in frivolous conduct by asserting and

4

continuing to pursue the theory of fraud in the inducement. *Id.* at ¶ 51. We also found that the trial court failed to address whether Alterra and its counsel engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(ii). *Id.* at ¶ 53. Accordingly, we remanded to the trial court with instructions to:

> (1)    set forth its calculations and reasoning for determining the amount of reasonable attorney fees and costs owed to 180 under the fee-shifting provision of the settlement agreement and release;
>
> (2)    decide whether and, if necessary, how much reasonable attorney fees and costs are due to 180 for CAM's and its attorneys' frivolous conduct; and
>
> (3)    determine whether Alterra and its attorneys engaged in any frivolous conduct and, if so, whether and, if necessary, how much reasonable attorney fees and costs are due to 180 for that conduct.

*Id.* at ¶ 55.

{¶11}    On remand, 180 sought $225,270.24 in attorney fees and costs. The trial court concluded, however, that 180's counsel expended more hours than reasonably necessary to defend against CAM's fraudulent-inducement claim. The court found that "[t]he case was not complex and the legal questions were not difficult." The court further found that "a request for nearly a quarter of a million dollars in fees is inordinate based upon the stakes involved in the litigation," and "[a]n inordinate amount of fees around $170,000 relate[d] to the fees sought to obtain sanctions." The court ultimately awarded $44,709.87 in attorney fees and $10,882.90 in costs, for a total award of $55,592.77. The court imposed joint-and-several liability against CAM and its counsel, based on the fee-shifting provision and the frivolous-conduct finding. The court also concluded that Alterra did not engage in frivolous conduct but that its counsel did engage in frivolous

5

conduct.  Because counsel simultaneously represented Alterra and CAM, however, the court declined to impose additional sanctions.  Both parties appealed.

{¶12}   In three assignments of error, 180 challenges the trial court's "unjustifiably low" determination of reasonable attorney fees and "unjustifiably low" award of sanctions against CAM and its counsel.  180 additionally argues that the trial court erred in finding Alterra's conduct was not frivolous under R.C. 2323.51(A)(2)(a).  In three cross-assignments of error, CAM and Alterra similarly argue that the trial court abused its discretion in determining the reasonableness of attorney fees and that the trial court erred in awarding sanctions against CAM and its counsel under R.C. 2323.51.

## II.    Attorney Fees

{¶13}   In 180's first assignment of error and CAM's first cross-assignment of error, both parties contend that the trial court erred in calculating the lodestar.  180 asserts that the lodestar is too low, arguing that it should have been awarded the full amount of attorney fees and costs requested—$225,270.24.  CAM asserts that the lodestar is too high, arguing that the trial court erred by ordering it to pay approximately $55,000 incurred by two law firms, in two states, with six legal professionals on a relatively simple case.

{¶14}   " 'It is well settled that where a court is empowered to award attorney fees * * *, the amount of such fees is within the sound discretion of the trial court." *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).  Therefore, an appellate court will not reverse the trial court's determination of reasonable attorney fees absent an abuse of discretion. *Bittner* at 146.

{¶15} On remand, the trial court was instructed to determine the amount of reasonable attorney fees using the lodestar method. To calculate the lodestar, the court must multiply the "number of hours reasonably expended on the litigation by a reasonable hourly rate." *Calypso II*, 2019-Ohio-2, 127 N.E.3d 507, at ¶ 28. Although the lodestar is presumed to be a reasonable amount of attorney fees, the court may modify the lodestar by application of the reasonableness factors in Prof.Cond.R. 1.5(a). *Id.* Those factors include the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar services; the amount involved and the results obtained; and the experience, reputation, and ability of the lawyer or lawyers performing the services. Prof.Cond.R. 1.5(a).

{¶16} Here, the trial court engaged in a line-by-line analysis for all of the 700 hours requested by 180. It is obvious that the court spent a lot of time and effort reviewing over 150 pages of billing entries submitted by 180. For each time entry, the court determined whether the hours expended were "reasonable." After conducting its line-by-line analysis, the court determined that the number of hours submitted by 180 was unreasonably high. The court conducted line-item reductions for two types of billed time: (1) block-billed time and (2) time billed pursuing sanctions against CAM. These line-item reductions resulted in an $86,664.84 reduction.

{¶17} The trial court further applied a 65-percent across-the-board reduction to those hours found to be reasonable under the line-by-line analysis. According to the court, an additional 65-percent reduction was warranted under the Prof.Cond.R. 1.5(a) factors. The court specifically stated that the complexity of the case warranted a 30-percent reduction; the clerical nature of certain work warranted a 15-percent

7

reduction; and the results obtained warranted a 25-percent reduction.[2] Based on these calculations, the trial court awarded a total of $55,592.77 in fees and costs—an amount 75 percent less than 180's request.

{¶18}  Both parties raise several errors with the trial court's calculation.

A.  Block Billing

{¶19}  First, 180 challenges the trial court's decision to categorically exclude block-billed entries.  CAM responds that counsel's block-billing practice did not allow for meaningful judicial review.

{¶20}  The billing records must be of sufficient detail to allow the trial court to determine the time allotted to specific tasks and the reasonableness of that time.  *Rose v. Volvo Constr. Equip. N. Am., Inc.*, N.D.Ohio No. 1:05CV168, 2009 WL 10715168, *4 (Feb. 6, 2009); *United Slate, Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495, 502 (6th Cir.1984), fn. 2.

{¶21}  Block billing involves " 'lumping multiple tasks into a single time entry.' " *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 6, quoting *Tridico v. Dist. of Columbia*, 235 F.Supp.3d 100, 109 (D.D.C.2017).  While block billing is not prohibited, it is disfavored because " 'there is simply no way * * * to assess whether the time spent on each of those tasks was reasonable when they are lumped together[.]' " *Id.*  If block-billed entries contain inadequate descriptions of the work performed, then the court "may reduce the award accordingly."  *Smith v. Serv. Master Corp.*, 592 Fed.Appx. 363, 371 (6th Cir.2014), citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

{¶22}  The Ohio Supreme Court recently announced a prospective rule "forbidding block-billing."  *State ex rel. Kesterson v. Kent State Univ.*, 155 Ohio St.3d

---

[2] The trial court also found that the reputation of 180's local counsel warranted a 5-percent enhancement.

1447, 2019-Ohio-1852, 122 N.E.3d 209, ¶ 30. In *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, the court held that it "will no longer grant attorney-fee applications that include block-billed time entries." *Id.* at ¶ 7. The court continued: "Future fee applications submitted to this court should contain separate time entries for each task, with the time expended on each task denoted in tenths of an hour. Applications failing to meet these criteria risk denial in full." *Id.* Based on our reading of *Harris*, it is not an abuse of discretion to categorically exclude all block-billed entries.

{¶23}   In this case, there is no dispute that 180's time records were partially block billed. However, our review of the invoices shows that the trial court arbitrarily excluded nine entries which were not block billed. These entries include the following:

July 1, 2015 entry by Carpenter Lipps & Leland LLP ("Carpenter") for 0.2 hours for "Draft email to Mr. A re order and receipt of motion for SJ ruling"

July 8, 2015 entry by Carpenter for 0.5 hours for "Draft emails to Mr. A re SJ and review of follow-up email"

August 24, 2016 entry by Kunzler Law Group, P.C., ("Kunzler") for 1.2 hours for "Calls with Bryan and Dave re strategy for dealing with motion for continuance and upcoming hearing"

September 22, 2016 entry by Kunzler for 0.5 hours for "Calls with Bryan and David re status of proposed order and pending opposition to motion for sanctions"

January 26, 2017 entry by Kunzler for 0.2 hours for "Call with David Watkins re Motion to exclude discovery and motion to certify decision for appeal"

March 6, 2017 entry by Kunzler for 0.3 hours for "Call with David Wallace re appeal and  potential settlement negotiations"

March 30, 2017 entry by Kunzler for 0.8 hours for "Call with Bryan and David re upcoming hearing"

January 3, 2018 entry by Carpenter for 3.1 hours for "Revise objections to MJ decision and incorporate quotes from hearing transcript and additional cases"

August 30, 2018 entry by Carpenter for 1.2 hours for "Additional prep and refinement of oral argument issues and draft anticipated rebuttal points"

May 1, 2019 entry by Kunzler for 1.4 hours for "Calls with Bryan and David re: strategy"

None of these entries lump multiple tasks into a single time entry. Instead, most of these entries consist of one task (e.g., phone call or email) with multiple subjects or recipients. Thus, the trial court abused its discretion in excluding these entries as block-billed entries.

{¶24} Based on our review of the billings, we must reverse the trial court's determination to exclude 9.4 hours of block-billed entries. We conclude that the lodestar should be increased by $3,260 for those hours.

### B. Hours Reasonably Expended

{¶25} Next, CAM challenges the number of hours expended by 180's attorneys, arguing that the hours were excessive and unnecessary. CAM insists that the only reasonably expended hours were those directly related to the motion for summary judgment. 180 responds that its assessment of hours included all necessary aspects of litigation, including not only pursuing summary judgment under the settlement agreement but also pursuing sanctions under the settlement agreement.

{¶26} The court may award attorney fees only for hours that were reasonably necessary to litigate the case. *Dowling v. Litton Loan Servicing, LP*, S.D.Ohio No. 05-CV-098, 2008 WL 906042, *2-3 (Mar. 31, 2008), *aff'd and remanded*, 320 Fed.Appx. 442

10

(6th Cir.2009), citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In determining the hours reasonably expended, the court must exclude " 'hours that are excessive, redundant, or otherwise unnecessary.' " *Harris*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, at ¶ 5, quoting *Hensley* at 434.

{¶27} In awarding less attorney fees than requested, the trial court found that the amount of hours spent on the case was well in excess of what would have been required under normal circumstances. The court found that the case involved a noncomplex real-estate transaction, the merits of which were precluded by a settlement agreement. The court held that the only hours reasonably necessary to litigate the case were those hours expended pursuing summary judgment. However, after reviewing 180's submitted billings, the court found that a majority of the hours were instead spent pursuing sanctions against CAM and its counsel.

{¶28} The trial court found that 180 spent over two years pursuing sanctions against CAM. The court made several line-item reductions for filing a disciplinary complaint against CAM's counsel, filing a motion to disqualify CAM's counsel, litigating a malicious-prosecution action against CAM and its counsel, and investigating other "alleged misconduct" by CAM's counsel. The court further found that 180's independent decision to file an unsuccessful, premature appeal and unsuccessful motions for reconsideration should not be attributable to CAM and its counsel. Accordingly, the court made line-item reductions for litigating the first appeal, filing a motion for travel expenses, and filing two motions for reconsideration.

{¶29} Our own review of the billing records raises some of the same concerns as the trial court. For example, 180's counsel spent more than 30 hours researching and filing a motion to disqualify CAM's counsel. 180's counsel also billed more than 15 hours investigating other alleged misconduct by CAM's counsel. At the sanctions hearing, 180's

11

own expert admitted that some of the billing entries were not directly related to defending the case. 180's expert specifically identified time entries for filing an ethics complaint against CAM's counsel and time entries for filing a malicious-prosecution action against CAM and its counsel. Based on the foregoing, the trial court did not abuse its discretion in excluding any fees for pursuing sanctions—a decision of 180's counsel which was wholly independent of 180's defense of the case.

{¶30} However, we find that the trial court arbitrarily excluded hours reasonably necessary to defend against CAM's fraudulent-inducement claim. "The law seeks to compensate attorneys for work reasonably done * * * to secure for clients the benefits to which they are entitled." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1305 (11th Cir.1988). Notwithstanding this principle, the court deducted time spent litigating the first appeal and filing a motion to reconsider the award of attorney fees—the merits of which were ultimately successful in *Calypso II*.

{¶31} Although the first appeal resulted in dismissal for lack of a final appealable order, it was not filed in vain. Despite neither party raising issue with the appealability of the trial court's judgment, this court sua sponte determined that the appeal was premature. This court found that based on the case's unusual posture, the finality of the trial court's order was "less clear." Finding no conclusive case law, this court relied on "principles of judicial economy and policy considerations that disfavor piecemeal and duplicative appeals" to dismiss the appeal for lack of a final appealable order.

{¶32} A review of the billing records shows that the hours billed for the first appeal related to the merits of 180's argument—an argument which was ultimately successful in *Calypso II*. 180's counsel fully briefed the case on its merits and attended oral arguments on the merits. 180's billing records demonstrate that counsel re-used

12

some of the work from the first appeal on the second appeal.  Thus, the 50.6 hours expended on the first appeal were reasonable, and the trial court abused its discretion by excluding those hours.

{¶33}  180's motion for reconsideration on attorney fees was similarly not a fruitless effort.  In its motion for reconsideration, 180 argued that the trial court's award of attorney fees was based on an incomplete and inaccurate analysis of 180's billing records.  180 asserted this same argument in *Calypso II,* wherein this court agreed with 180 and reversed the judgment of the trial court.  180's billing records again demonstrate that counsel re-used work from the motion for reconsideration on the second appeal.  Thus, the 10.1 hours expended on the motion for reconsideration were likewise reasonable, and the trial court abused its discretion by excluding those hours.

{¶34}  Based on the foregoing, we must reverse the trial court's determination to exclude 50.6 hours for litigating the first appeal and 10.1 hours for filing the motion for reconsideration.  We conclude that the lodestar should be increased by $19,407 for those hours.

### C.  Prof.Cond.R. 1.5(a)

{¶35}  Finally, 180 challenges the trial court's consideration of the Prof.Cond.R. 1.5(a) factors and application of a 65-percent across-the-board reduction.  CAM responds that the trial court was within its discretion to apply the Prof.Cond.R. 1.5(a) factors and modify the fee award accordingly.

{¶36}  Although the Prof.Cond.R. 1.5(a) factors were traditionally considered the "second part" of determining attorney fees, their application has long been an area of turmoil.  Courts often find that the two steps overlap "because several of the reasonableness factors are often subsumed within the initial lodestar calculation." *Miller*

*v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, ¶ 14 (10th Dist.). Where the Prof.Cond.R. 1.5(a) factors are already considered in the initial calculation of a reasonable fee, they cannot provide an independent basis for further adjusting the fee award. *Id.* at ¶ 14, citing *Freeman v. Crown City Mining, Inc.*, 90 Ohio App.3d 546, 557, 630 N.E.2d 19 (4th Dist.1993). "[S]uch double counting is impermissible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir.2008).

{¶37} The Ohio Supreme Court recently clarified the proper application of the Prof.Cond.R. 1.5(a) factors in *Phoenix Lighting Group, LLC v. Genlyte Thomas Group, LLC*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30. Guided by United States Supreme Court precedent, the *Phoenix* court rejected the notion that enhancements under the Rules of Professional Conduct are allowed "as a matter of course." *Id.* at ¶ 20. The court instead held that "there is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award." *Id.* at ¶ 19. The court found that the lodestar is not just an "initial estimate" of a reasonable fee because the Prof.Cond.R. 1.5(a) factors "are subsumed within the lodestar; they do not enhance the lodestar." *Id.* at ¶ 16-17. Thus, the court determined that enhancements to the lodestar "should be granted rarely" and only to the extent that is "necessary to account for a factor not already subsumed in the lodestar calculation." *Id.* at ¶ 17-19.

{¶38} In *Phoenix Lighting Group*, the Ohio Supreme Court focused on enhancements to the lodestar, as opposed to reductions. However, the same reasoning holds true for reductions to the lodestar. *See, e.g., Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir.2008) ("The *Johnson* factors are to be considered in determining the lodestar figure; they should not be reconsidered in making either an upward or downward adjustment to the lodestar—doing so amounts to double-counting.");

*Millea v. Metro-N. R. Co.*, 658 F.3d 154, 167 (2d Cir.2011) ("[A] court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors. Instead, the lodestar can be adjusted only by factors relevant to the determination of reasonable attorneys' fees that were not already considered in the initial lodestar calculation."); *Cooper v. Retrieval-Masters Creditors Bur., Inc.*, 338 F.Supp.3d 729, 736 (N.D.Ill.2018), quoting *Spellan v. Bd. of Edn. for Dist. 111*, 59 F.3d 642, 647 (7th Cir.1995) (" '[I]n ordering an across-the-board reduction, the district court [must] not engage in double-counting' by again considering factors already taken into account in calculating the lodestar.").

{¶39} In this case, the trial court's Prof.Cond.R. 1.5 reductions constituted impermissible double-counting. The court initially determined that $127,742.50 was a "reasonable" lodestar. But the court subsequently reduced those fees by 65 percent and called the new total "reasonable." The court did not offer independent justifications for its line-item reductions and its percentage reductions.

{¶40} For example, the trial court stated that a 30-percent reduction was warranted because the case involved a simple real-estate transaction resolved on summary judgment. The court specifically noted that 180 "filed a premature first appeal which was ultimately dismissed." The court ultimately concluded that the time and labor spent by 180's counsel was "inordinate" and "not required." But the court already made line-item reductions for hours not expended pursuing summary judgment when calculating the lodestar. As described above, the court explicitly excluded hours expended on the first appeal, albeit erroneously.

{¶41} In addition, the court applied a 15-percent reduction for the rate customarily charged. The court found that 180's counsel billed excessive rates for ministerial tasks. However, if a 15-percent reduction was warranted for charges that

occurred throughout the whole billing record, then that reduction should have been made to the reasonable hourly rate in the initial lodestar calculation. Instead, the court concluded that the hourly rates billed by 180's counsel "were mostly reasonable."

{¶42} Finally, the court determined that a 25-percent reduction was warranted because only a small amount of the billed fees were related to obtaining summary judgment and an inordinate amount of fees were related to obtaining sanctions. The court relied upon expert testimony that "only $44,000 of the billed fees were related to obtaining summary judgment." But again, the court already made line-item reductions for hours not expended pursuing summary judgment when calculating the lodestar.

{¶43} Therefore, the trial court unreasonably and arbitrarily modified the lodestar by factors already subsumed in the initial lodestar calculation. Accordingly, the court abused its discretion in applying a 65-percent across-the-board reduction based on the reasonableness factors in Prof.Cond.R. 1.5(a).

### D. Amount of Reasonable Attorney Fees

{¶44} In sum, our assessment of the amount of reasonable attorney fees is as follows: The trial court properly determined the attorneys' hourly rates. However, the court improperly excluded nonblock-billed hours and underestimated the amount of hours devoted to defending the case. The court also impermissibly double-counted reductions under the Prof.Cond.R. 1.5(a) factors. Thus, its calculation of attorney fees does not adequately reflect the amount of reasonable attorney fees expended on the litigation.

{¶45} In the interests of judicial efficiency, we determine reasonable attorney fees in the amount of $150,409.50 ($3,260 nonblock-billed entries + $19,407 hours reasonably expended + $127,742.50 attorney fees prior to Prof.Cond.R. 1.5(a) reduction).

**{¶46}** For the reasons set forth above, we sustain 180's first assignment of error which argued that the lodestar was unreasonably low and overrule CAM's first cross-assignment of error which argued that the lodestar was excessively high.

### III.   Sanctions Against CAM and its Attorneys

**{¶47}** Both parties assign error to the amount of sanctions the trial court imposed under R.C. 2323.51. We address each argument in turn.

**{¶48}** In its second assignment of error, 180 argues that the trial court imposed an unreasonably low sanction based on its misapplication of the lodestar method.

**{¶49}** An award of attorney fees "may be equal to or less than" the fees reasonably incurred by a party. R.C. 2323.51(B)(3). The purpose of R.C. 2323.51 is to chill " 'egregious, overzealous, unjustifiable and frivolous action.' " *Grimes v. Oviatt*, 2019-Ohio-1365, 135 N.E.3d 378, ¶ 37 (8th Dist.), quoting *Ferron v. Video Professor, Inc.*, 5th Dist. Delaware No. 08-CAE-09-0055, 2009-Ohio-3133, ¶ 69. Because deterrence is the primary goal of R.C. 2323.51, the court should impose the minimum amount of sanctions necessary to deter repeated conduct.

**{¶50}** In this case, the trial court determined that CAM had to pay reasonable attorney fees under the fee-shifting provision. The court also determined that CAM's counsel should pay sanctions under R.C. 2323.51. Based on its misapplication of the lodestar method, the court concluded that the reasonable attorney fees and costs totaled $55,592.77. Accordingly, the trial court ordered CAM and its counsel to jointly and severally pay $55,592.77 in attorney fees and costs to 180.

**{¶51}** As described in section *II.*, the court relied on an erroneous calculation of reasonable attorney fees in imposing sanctions against CAM and its counsel. Therefore, we must reverse the court's determination of attorney fees under R.C. 2323.51 and

17

remand the cause for reconsideration in light of the principles described herein. 180's second assignment of error is sustained.

{¶52} In its second cross-assignment of error, CAM argues that the trial court failed to properly consider a smaller award of sanctions. In support of its argument, CAM highlights the following portion of the trial court's decision:

> The Court believes that if the *Scott* case allows no award of fees in spite of frivolous conduct, then a fortiori, this Court could certainly reduce the fees based on the conduct of 180 Industrial in this case. However, this Court would rather err on the side of caution because there is no current guidance from the Tenth District as to whether this Court can <u>reduce</u> the fees sought by a party under the *Scott* analysis.

(Emphasis in original.)

{¶53} Tenth District case law does recognize that "a trial court has the discretion to award reasonable attorney fees that fall short of the total amount of fees reasonably incurred." *Southard Supply, Inc. v. Anthem Contrs., Inc.*, 10th Dist Franklin No. 16AP-545, 2017-Ohio-7298, ¶ 45. *Scott v. Namath*, 10th Dist. Franklin No. 16AP-64, 2016-Ohio-5532, ¶ 30-32, demonstrates that the trial court may "reduce awards of reasonable attorney fees all the way down to zero." *Southard Supply* at ¶ 45.

{¶54} However, we need not evaluate the trial court's analysis under *Scott* because we find that the analysis is ultimately based on an erroneous calculation of attorney fees. Thus, CAM's second cross-assignment of error is moot in light of our resolution of 180's second assignment of error.

### IV. *Frivolous Conduct of Alterra and its Attorneys*

{¶55} Because both 180's third assignment of error and CAM's third cross-assignment of error relate to the trial court's frivolous-conduct findings, we will address

18

them together. In its third assignment of error, 180 argues that the trial court erroneously found that Alterra did not engage in frivolous conduct by joining in the lawsuit. 180 also challenges the court's refusal to impose additional sanctions against Alterra's counsel. In its third cross-assignment of error, CAM argues that the trial court erroneously found that its counsel engaged in frivolous conduct by pursuing claims on behalf of Alterra.

{¶56} "When reviewing a claim under R.C. 2323.51, no single standard of review applies[.]" *Briscoe v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. Franklin No. 14AP-533, 2015-Ohio-3567, ¶ 35. A frivolous-conduct finding requires a legal analysis, and thus, is subject to a de novo standard of review. *Id.*; *Calypso II*, 2019-Ohio-2, 127 N.E.3d 507, at ¶ 43. However, the decision to assess a penalty for frivolous conduct lies within the sound discretion of the trial court and should not be reversed absent an abuse of discretion. *Briscoe* at ¶ 35.

{¶57} R.C. 2323.51(B)(1) allows a trial court to award court costs, reasonable attorney's fees, and other reasonable expenses to any party adversely affected by frivolous conduct. "Frivolous conduct" includes conduct of a party or the party's counsel that "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law." R.C. 2323.51(A)(2)(a)(ii).

{¶58} R.C. 2323.51(A)(1) requires individual consideration of each claim, rather than examination of the complaint as a whole, to determine whether frivolous conduct exists. *Wiltberger v. Davis*, 110 Ohio App.3d 46, 53, 673 N.E.2d 628 (1oth Dist.1996).

A. Legal Standard

{¶59} On remand, the trial court held that Alterra did not engage in frivolous conduct but that its counsel did engage in frivolous conduct. The court found that Alterra

was an intended third-party beneficiary of the sale-leaseback agreement between CAM and 180, and thus, could feasibly allege claims for breach of contract and tortious interference. However, the court concluded that the settlement agreement voided the sale-leaseback agreement and foreclosed all claims arising out of that transaction.

{¶60} Accordingly, the court determined that "knowledge of the [settlement agreement] [was] the factual condition that gave rise to the frivolous conduct in this case." Relying on the testimony of Alterra's president, the court found that Alterra was not a party to the settlement agreement and had no firsthand knowledge of the agreement. Accordingly, the court held that "a reasonable attorney may have filed the legal claims from Alterra's perspective" and that pursuit of these claims did not amount to frivolous conduct within the meaning of R.C. 2323.51(A)(2)(a). Conversely, the court found that counsel simultaneously represented CAM and Alterra, and thus, had firsthand knowledge of the settlement agreement. Accordingly, the court held that a reasonable attorney would not have pursued "the derivative claim of breach of contract and tortious interference with a business and contractual relationship on behalf of Alterra[.]" Based on this analysis, the court concluded that Alterra's counsel engaged in frivolous conduct under R.C. 2323.51.

{¶61} An individual's subjective knowledge is not relevant in determining whether a claim is frivolous under R.C. 2323.51(A)(2)(a)(ii). *Judd v. Meszaros*, 10th Dist. Franklin No. 10AP-1189, 2011-Ohio-4983, ¶ 22; *Stafford v. Columbus Bonding Ctr.*, 177 Ohio App.3d 799, 2008-Ohio-3948, ¶ 8 (10th Dist.). The court does not look to what the party or its attorney knew or believed in deciding whether conduct is frivolous. *Id.* Instead, the trial court applies an objective standard—whether no reasonable lawyer would have brought the action in light of the existing law. *Southard Supply*, 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, at ¶ 29. Given the objective nature of the

analysis, the trial court erred in considering the personal knowledge of Alterra and its counsel.

**{¶62}** Finding that the trial court erred in its frivolous-conduct analysis, we will now conduct our own de novo analysis.

## B. Breach of Contract

**{¶63}** We begin with Alterra's breach-of-contract claim. In the complaint, Alterra alleged that 180 materially breached the sale-leaseback agreement by failing to close on the transaction, and by failing to act in accordance with its duty of good faith and fair dealing.

**{¶64}** 180 argues that pursuit of this claim was frivolous because it was derivative of CAM's claims and CAM's claims were foreclosed by the settlement agreement. As described above, the trial court also deemed the settlement agreement (and the parties' knowledge thereof) dispositive of this issue. We disagree.

**{¶65}** Settlement agreements are binding "only upon [parties to the agreement] and not upon a third person." *State ex rel. Dillard Dept. Stores v. Ryan*, 122 Ohio St.3d 241, 2009-Ohio-2683, 910 N.E.2d 438, ¶ 18. It is undisputed that Alterra was not a party to the settlement agreement. The settlement agreement listed "Calypso Asset Management, LLC," and "180 Industrial, LLC" as parties. The settlement agreement also contained a "No Third-party Beneficiaries" provision, which provided that no rights were conferred upon a nonparty to the agreement and no obligations were created by CAM or 180 to any nonparty to the agreement. Although it expressly bound the parties and their "agents," it is unclear whether Alterra qualified as an "agent" of CAM under the agreement. This is especially true where Alterra's president testified that he was not present during negotiations over the settlement agreement and had no firsthand knowledge of the agreement.

21

**{¶66}** Finding that the settlement agreement does not necessarily encompass Alterra's claim, we turn now to the merits of the claim. It is well-established that "[o]nly a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract." *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St.3d 158, 160, 566 N.E.2d 1220 (1991), citing *Visintine & Co. v. New York, Chicago, & St. Louis RR Co.*, 169 Ohio St. 505, 160 N.E.2d 311 (1959). Because Alterra was not a party to the sale-leaseback agreement, the issue is whether Alterra was an intended third-party beneficiary to the agreement.

**{¶67}** For a third party to be an intended beneficiary, there must be evidence that the contract was intended to directly benefit that third party. *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12. Alterra claims that Section 8 of the sale-leaseback agreement indicates the requisite intent. Section 8 provided: "[CAM] shall pay a real estate commission fee at Closing to Alterra Real Estate Advisors as [CAM's] agent pursuant to a separate agreement[.]"

**{¶68}** There is sparse authority to support Alterra's breach-of-contract claim. In fact, this court found only one case which allowed a similar third-party-beneficiary action. *See Northcrest Gardens Apts. Ltd. v. Wertz*, 2d Dist. Montgomery No. 12020, 1990 WL 212707 (Dec. 17, 1990) (holding that a real-estate broker can assert breach-of-contract claim as a third-party beneficiary to a purchase agreement between buyer and seller where brokerage commission was to be paid from the purchase price). Admittedly, *Northcrest Gardens Apts.* is an older case of minimal persuasive value. However, we cannot say that the state of existing authority is such that a breach-of-contract claim was wholly unwarranted and could not be supported by a good-faith argument.

**{¶69}** Based upon the foregoing, we find that Alterra's breach-of-contract claim demonstrated arguable merit and did not on its face amount to frivolous conduct under R.C. 2323.51(A)(2)(a)(ii).

### C. Tortious Interference

**{¶70}** Next, we turn to Alterra's tortious-interference claim. In the complaint, Alterra alleged that 180 intentionally interfered with the ongoing business and contractual relationships between itself and Calypso.

**{¶71}** 180 argues that pursuit of this claim was frivolous because Alterra had no existing relationship with Calypso. We agree.

**{¶72}** In order to establish such a claim, Alterra was required to show: (1) a contractual or business relationship between itself and another party (2) with which the defendant intentionally interfered and (3) caused damages. *State ex rel. CannAscend Ohio LLC v. Williams*, 10th Dist. Franklin No. 18AP-820, 2020-Ohio-359, ¶ 60.

**{¶73}** A review of the record reveals that Alterra had neither a contractual nor a business relationship with Calypso. This case involved two separate transactions: a lease of the property with an option to purchase and a sale-leaseback of the property. First, CAM and Calypso entered into a "Letter of Intent" for the lease of the property with an option to purchase. CAM subsequently hired Alterra to market the property and pursue a sale-leaseback transaction. Alterra and Calypso were strangers to one another. Therefore, Alterra could never have proven that a contractual or business relationship existed. Accordingly, Alterra's tortious-interference claim was not warranted by existing law, and pursuit of this claim amounted to frivolous conduct within the meaning of R.C. 2323.51(A)(2)(a)(ii).

23

{¶74} R.C. 2323.51(B)(4) provides that an award of attorney fees for frivolous conduct may be imposed upon either a party or his attorney or both. "The objective of the statute is to impose sanctions on the person actually responsible for the frivolous conduct." *Sain v. Roo*, 10th Dist. Franklin No. 01AP-360, 2001 WL 1263665, *8 (Oct. 23, 2001). By allowing the imposition of sanctions against the party, attorney, or both, "the statute provides a mechanism for the court to place blame directly where fault lies." *Southard Supply,* 10th Dist. Franklin No. 16AP-545, 2017-Ohio-7298, at ¶ 36.

{¶75} "Where a * * * court has found the existence of frivolous conduct, the decision to assess or not to assess a penalty lies within the sound discretion of the trial court." *Sain* at *3, citing *Wiltberger,* 110 Ohio App.3d at 52, 673 N.E.2d 628. Therefore, it is not within our authority to decide, in the first instance, whether sanctions should be imposed against Alterra. Accordingly, we must remand the cause for the trial court to determine whether sanctions are warranted in light of the principles described herein. We also remand the cause for the trial court to reassess its award of sanctions against Alterra's counsel based on the totality of the circumstances, including our finding that Alterra engaged in frivolous conduct.

{¶76} 180's third assignment of error is sustained and CAM's third cross-assignment of error is overruled.

### V.    Conclusion

{¶77} For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded to the trial court. On remand, we instruct the court (1) to enter an award of attorney fees and costs in the amount of $161,292.40 ($150,409.50 in attorney fees + $10,882.90 in costs) to be paid by CAM under the settlement agreement, and (2) to reconsider the award of sanctions in light of this opinion.

Judgment reversed and cause remanded.

24

**MYERS, P.J.,** and **BERGERON, J.,** concur.

