[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

COURT OF APPEALS
FRANKLIN COUNTY, OHIO
TENTH APPELLATE DISTRICT

| | |
|---|---|
| CALYPSO ASSET MANAGEMENT, LLC, et al., | : JUDGES:<br>: Hon. William B. Hoffman, P.J.<br>: Hon. John W. Wise, J. |
| Plaintiff - Appellees/Cross-Appellant | : Hon. Craig R. Baldwin, J.<br>:<br>: Ohio Supreme Court |
| | : |
| 180 INDUSTRIAL, LLC., et al., | : Case No. 22AP-718 |
| Defendant - Appellant/Cross-Appellee | : <u>O P I N I O N</u> |

CHARACTER OF PROCEEDING:          Appeal from the Franklin County
                                  Court of Common Pleas, Case No. 15-
                                  CV-05-0446

JUDGMENT:                         Affirmed

DATE OF JUDGMENT:                 June 18, 2024

APPEARANCES:

For Plaintiff-Appellee/Cross- Appellant

RICK L. BRUNNER
PATRICK M. QUINN
Brunner Quinn
5001 Horizons Drive, Suite 209
Columbus, Ohio 43220

Appellee-Alterra Real Estate Advisors, LLC

BARRY WOLINETZ
Wolinetz, Horvath & Brown, LLC
250 Civic Center Drive, Suite 220
Columbus, Ohio 43215

For Defendant-Appellant/Cross-Appellee

DAVID A. WALLACE
Carpenter Lipps & Leland LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718          2

*Baldwin, J.*

{¶1} This case arises from a failed business transaction between Defendant-Appellant/Cross-Appellee 180 Industrial, LLC ("180"), Plaintiff-Appellee/Cross-Appellant Calypso Asset Management, LLC ("Calypso"), and Plaintiff-Appellee Alterra Real Estate Advisors, LLC ("Alterra").

## STATEMENT OF THE FACTS AND THE CASE

{¶2} This matter is on appeal for the fourth time. The most recent appellate opinion, *Calypso Asset Management, LLC v. 180 Industrial, LLC*, 2021-Ohio-1171 (10th Dist.) "CAM III", succinctly sets forth the pertinent facts as follows:

> CAM and 180 have been in a dispute regarding a failed sale-leaseback deal since 2015. CAM intended to purchase a logistics company and the property used to operate the company from defendant Calypso Distribution Services, Ltd., ("Calypso"). CAM sought to finance the transaction by entering into a sale-leaseback agreement for the property with 180. CAM hired plaintiff-appellee/cross-appellant Alterra Real Estate Advisors, LLC, ("Alterra") as a real-estate broker for the sale-leaseback transaction.

> During the sale-leaseback agreement's due-diligence period, 180 sent CAM a contingency letter which identified numerous improvements that would need to be made before closing. When the letter failed to yield a satisfactory response, 180 attempted to restructure the terms of the sale-leaseback agreement. CAM rejected the proposed restructuring, and the deal fell apart.

In late 2014, CAM and 180 entered into a settlement agreement. The settlement agreement discharged any claims arising from or related to the sale-leaseback transaction. The settlement agreement also contained a fee-shifting provision, which provided: "If any action is brought to enforce this Agreement, or is brought in connection with any dispute arising out of this Agreement or the claims that are the subject of this Agreement, the prevailing Party shall be entitled to recover damages, attorney's fees, and other costs incurred in such litigation * * * [.]" Alterra was not a party to the settlement agreement.

After CAM and 180 executed the settlement agreement, Calypso entered into a similar sale-leaseback transaction with Triple Net Acquisitions, LLC, ("Triple *796 Net"). Although the exact affiliation is unclear from the record, Triple Net and 180 shared a chief operating officer—Bryan Norton. In spring 2015, CAM discovered the sale-leaseback transaction between Calypso and Triple Net, and filed suit with Alterra against 180.[1] CAM contended that the settlement agreement resulted from fraudulent inducement, and thus, was void. CAM also asserted a substantive claim of fraud, and with Alterra, asserted claims for breach of contract and tortious interference with a business and contractual relationship.

In July 2015, 180 moved for summary judgment. On March 29, 2016, the trial court granted the motion for summary judgment. The court found that 180 had not induced CAM into entering the settlement agreement, and thus, it was enforceable. Accordingly, the court found that the settlement

agreement barred CAM's claims against 180. The court also found that Alterra had no cognizable relationship with 180 to support its breach-of-contract and tortious-interference claims.

The trial court concluded that 180 was the prevailing party and could move for an award of attorney fees under the settlement agreement's fee-shifting provision. 180 subsequently moved for $50,563.05 in attorney fees and costs. 180 supported its request with copies of billing records and expert testimony. Following a fees hearing, the trial court awarded $30,599.44 in attorney fees and costs. Dissatisfied with the amount awarded, 180 moved for reconsideration. After the trial court denied reconsideration, 180 appealed.

That first appeal was ultimately dismissed on jurisdictional grounds. Following briefing and oral arguments on the merits, this court sua sponte found that the appeal was premature. Prior to filing the first appeal, 180 had moved for sanctions under R.C. 2323.51. When the first appeal was pending, the motion for sanctions remained pending in the trial court. This court found that based on the case's unusual posture, the finality of the trial court's order was "less clear." However, the court decided, "As the current case is postured, principles of judicial economy and policy considerations that disfavor piecemeal and duplicative appeals support a finding that the current appeal is premature[.]" Thus, this court dismissed the appeal for lack of a final appealable order.

In its motion for sanctions, 180 argued that CAM, Alterra, and their shared counsel had engaged in frivolous conduct under R.C. 2323.51 by

filing the underlying complaint. 180 sought an order requiring CAM, Alterra, and their counsel to jointly and severally pay the attorney fees and costs incurred by 180. 180 again supported its request with copies of billing records and expert testimony regarding the reasonableness of the fees sought. Following a sanctions hearing, the magistrate found that CAM, Alterra, and their counsel did not engage in frivolous conduct, and denied 180's motion for sanctions. 180 objected. The trial court agreed with the magistrate's conclusions and overruled 180's objections. Having resolved the motion for sanctions, 180 again appealed.

In the second appeal, this court addressed the award of attorney fees which 180 claimed to have been arbitrarily determined and unreasonably low. *Calypso Asset. Mgt., LLC v. 180 Indus., LLC*, 2019-Ohio-2, 127 N.E.3d 507, ¶ 28 (10th Dist.) ("*Calypso II*"). We found that "the trial court did not perform the first step of the lodestar method," and instead, "summarily concluded" that $30,000 was reasonable. *Id.* at ¶ 30. This court also addressed the denial of 180's motion for sanctions. We found that CAM and its counsel engaged in frivolous conduct by asserting and continuing to pursue the theory of fraud in the inducement. *Id.* at ¶ 51. We also found that the trial court failed to address whether Alterra and its counsel engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(ii). *Id.* at ¶ 53. Accordingly, we remanded to the trial court with instructions to:

(1)     set forth its calculations and reasoning for determining the amount of reasonable attorney fees and costs owed to 180 under the fee-shifting provision of the settlement agreement and release;

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718                                                               6

(2)     decide whether and, if necessary, how much reasonable attorney fees and costs are due to 180 for CAM's and its attorneys' frivolous conduct; and

(3)     determine whether Alterra and its attorneys engaged in any frivolous conduct and, if so, whether and, if necessary, how much reasonable attorney fees and costs are due to 180 for that conduct.

*(4)*     *Id.* at ¶ 55.

On remand, 180 sought $225,270.24 in attorney fees and costs. The trial court concluded, however, that 180's counsel expended more hours than reasonably necessary to defend against CAM's fraudulent-inducement claim. The court found that "[t]he case was not complex and the legal questions were not difficult." The court further found that "a request for nearly a quarter of a million dollars in fees is inordinate based upon the stakes involved in the litigation," and "[a]n inordinate amount of fees around $170,000 relate[d] to the fees sought to obtain sanctions." The court ultimately awarded $44,709.87 in attorney fees and $10,882.90 in costs, for a total award of $55,592.77. The court imposed joint-and-several liability against CAM and its counsel, based on the fee-shifting provision and the frivolous-conduct finding. The court also concluded that Alterra did not engage in frivolous conduct but that its counsel did engage in frivolous conduct. Because counsel simultaneously represented Alterra and CAM, however, the court declined to impose additional sanctions. Both parties appealed.

In three assignments of error, 180 challenges the trial court's "unjustifiably low" determination of reasonable attorney fees and "unjustifiably low" award of sanctions against CAM and its counsel. 180 additionally argues that the trial court erred in finding Alterra's conduct was not frivolous under R.C. 2323.51(A)(2)(a). In three cross-assignments of error, CAM and Alterra similarly argue that the trial court abused its discretion in determining the reasonableness of attorney fees and that the trial court erred in awarding sanctions against CAM and its counsel under R.C. 2323.51.

*Id.* at ¶¶2-12.

{¶3} The CAM III court reviewed the attorney fee issue, including block billing and the reasonableness of the hours expended, and discussed attorney fees in the context of Rule 1.5(a) of the Ohio Rules of Professional Conduct. The CAM III court also reviewed the sanctions issue. Following a detailed analysis of these issues, the CAM III court reversed and remanded the matter to the trial court, and instructed the trial court to: (1) enter an award of attorney fees and costs in the amount of $161,292.40 ($150,409.50 in attorney fees and $10,882.90 in costs) to be paid by Calypso under the settlement agreement; and, (2) reconsider the award of sanctions in light of the CAM III court's opinion.

{¶4} Upon remand the trial court conducted a hearing and allowed the admission of additional and supplemental evidence. The court reviewed all materials presented by the parties on the issues, and considered the evidence presented. On October 5, 2022, the trial court issued a Decision on Sanctions Motions in which it conducted a detailed analysis of the frivolous conduct and sanctions issues, noting that the purpose of

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718                                    8

sanctions is to "deter abuse of the judicial process, and discourage egregious, overzealous, unjustifiable and frivolous actions." Following a detailed analysis of the issues, the trial court held:

> While CAM was found to have brought a frivolous claim in *Calypso II,* the fees-shifting provision in the underlying contract provides a significant financial recovery to 180 Industrial. The court does not believe any further sanction is warranted against CAM.

> Alterra's involvement in the lawsuit was secondary. It was not the driving force behind the case. In joining the suit against 180 Industrial, Alterra reasonably relied upon Brunner Quinn. It modestly investigated the legal process before joining the suit. While Alterra was independently advised the case would be "difficult" such a preliminary prediction offers no basis for imposing sanctions; otherwise many legitimate lawsuits would never be brought. The purpose of sanctions is to deter abuse of the judicial process, and discourage unjustifiable and frivolous actions, but not to shut down legitimate advocacy. Considering everything, although Alterra has been found to have engaged in frivolous misconduct for one of its claims this court declines to award any financial sanction against Alterra.

> Litigation misconduct by CAM and Alterra was guided by their lawyers. Filing suit despite the mutual release put the case on thin ice from the outset. It seems very unlikely that Alterra would have participated at all had Brunner Quinn not given encouragement that a suite was sensible. Using the perspective gained from the more than six years of suits, counter-suits, disciplinary complaints, appeals, and other formal proceeding

addressed to sanction, the court believes that a finding of frivolous misconduct against Brunner Quinn coupled with a financial sanction limited to $50,000, plus the court costs in this case, is fully sufficient. Awarding anything approaching the full amount of money now sought by 180 Industrial would be excessive, inequitable, and inconsistent with the purpose for which R.C. 2323.51 exists.

Finally, in considering the magnitude of a financial sanction the court necessarily recognizes that any law firm relies upon its reputation to attract business. Here conduct by the law firm has been discussed in a federal trial court decision, three appellate court decisions, and multiple decisions by this court. Those tarnish Brunner Quinn's reputation, and surely will discourage some potential clients from retaining them in the future. Standing alone this is a meaningful, though nonmonetary sanction.

Counsel for 180 Industrial shall circulate a Final Judgment to all counsel and submit it to the court within 10 business days.

**IT IS SO ORDERED.**

{¶5} On November 2 2022, the trial court issued a Final Judgment in which it entered judgment as follows: (1) found in favor of 180 Industrial and against Calypso for attorney fees and costs of $161,292.40 as ordered by the appellate court in CAM III, plus interest at the legal rate from April 6, 2021, and declined to award any additional amounts; (2) declined to enter an award against Calypso for frivolous conduct; (3) entered judgment in favor of 180 Industrial against Brunner Quinn for $50,000.00 as a sanction for frivolous conduct; (4) declined to enter a judgment against Alterra for frivolous conduct; (5) taxed all court costs against Brunner Quinn, and declined to award additional monetary

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718                                                                        10

sanctions sought by 180 Industrial for deposition transcript costs; and, (6) dismissed any other remaining claims with prejudice.

{¶6}   180 Industrial filed a timely appeal, and sets forth the following five assignments of error:

{¶7}   "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO CALCULATE ALL OF THE ATTORNEY FEES AND EXPENSES PAYABLE UNDER THE SETTLEMENT AGREEMENT."

{¶8}   "II. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO USE A SOUND REASONING PROCESS FOR ASSESSING THE SANCTION AGAINST BRUNNER QUINN."

{¶9}   "III. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ASSESS A SANCTION AGANST [SIC] CAM."

{¶10}  "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ASSESS A SANCTION AGAINST ALTERRA."

{¶11}  "V. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD COURT COSTS."

{¶12}  Calypso filed a timely cross-appeal, and sets forth the following sole assignment of error:

{¶13}  "I. THE TRIAL COURT ERRED IN IMPOSING SANCTIONS ON COUNSEL."

**STANDARD OF REVIEW**

{¶14}  The standard of review of a trial court's decision on the issue of attorney fees was discussed in the seminal case of *Bittner v. Tri-Cnty. Toyota, Inc.*, 58 Ohio St. 3d 143 (1991):

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718             11

"It is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Brooks v. Hurst Buick–Pontiac–Olds–GMC, Inc.* (1985), 23 Ohio App.3d 85, 91, 23 OBR 150, 155, 491 N.E.2d 345, 351–352.

*Id.* at 146. "A trial court has discretion to modify the presumptive calculation of an attorney-fee award—the reasonable hourly rate multiplied by the number of hours worked—but any modification must be accompanied by a rationale justifying the modification. *Phoenix Lighting Grp., L.L.C. v. Genlyte Thomas Grp., L.L.C.*, 2020-Ohio-1056, ¶20.

{¶15} The standard of review of a trial court's decision on the imposition of sanctions for frivolous conduct was succinctly discussed by the court in *Ohio Edison Co. v. Cubick,* 2020-Ohio-7027 (7th Dist.):

. . . In order to determine the standard of review, we must consider " 'whether the trial court's determination resulted from factual findings or a legal analysis.' " *Breen v. Total Quality Logistics*, 10th Dist. Franklin No. 16AP-3, 2017-Ohio-439, 2017 WL 496497, ¶ 11. "When the question regarding what constitutes frivolous conduct calls for a legal determination, such as whether a claim is warranted under existing law, an appellate court

is to review the frivolous conduct determination de novo, without deference
to the trial court's decision." *Watson*, 2020-Ohio-3412 at ¶ 64, citing *Natl.
Check Bur. v. Patel*, 2d Dist. Montgomery No. 21051, 2005-Ohio-6679,
2005 WL 3454694, ¶ 10. *See also Brisco*, 2019-Ohio-5318 at ¶ 13 (Legal
questions are reviewed de novo.). However, if there is no disputed issue of
the law and the question is purely factual, an abuse of discretion standard
of review is applied. *Watson*, 2020-Ohio-3412 at ¶ 64, citing *Riverview
Health Inst., L.L.C. v. Kral*, 8th Dist. Cuyahoga No. 24931, 2012-Ohio-3502,
2012 WL 3140292, ¶ 33. *See also Brisco*, 2019-Ohio-5318 at ¶ 13 (Trial
courts' factual determinations will not be disturbed where the record
contains competent, credible evidence to support its determinations.).
Likewise, the ultimate decision whether to award sanctions under R.C.
2323.51 will not be reversed absent a showing of an abuse of discretion.
*Watson* at ¶ 64, citing *State ex rel. Bell v. Madison Cty. Bd. of Commrs.*,
139 Ohio St.3d 106, 2014-Ohio-1564, 955 N.E.2d 995, ¶ 10. *See also Brisco*
at ¶ 13.

*Id.* at ¶ 20.

**{¶16}** The legal determination regarding whether frivolous conduct is present in
this case has already been determined by the previous decisions in CAM II and CAM III.
CAM III instructed the trial court to reconsider an award of sanctions in light of the finding
that frivolous conduct had occurred. Thus, the trial court was, on remand, merely
reviewing the facts of the case in light of the CAM III decision in order to make a
determination regarding whether, and if so how much, should be awarded as sanctions

for frivolous conduct. Accordingly, we review the trial court's decision based upon an abuse of discretion standard.

{¶17}   In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**ANALYSIS**

{¶18}   The court in CAM III instructed the trial court to enter an award of attorney fees and costs in the amount of $161,292.40 to be paid by Calypso under the settlement agreement. On remand, the trial court issued a Final Judgment in which it found in favor of 180 Industrial and against Calypso for attorney fees and costs of $161,292.40 as ordered by the CAM III court, plus interest at the legal rate from April 6, 2021. Thus, the trial court complied with the first prong of the CAM III decision.

{¶19}   In addition, on remand the trial court conducted a hearing, and even permitted the parties to submit additional and supplemental evidence. The court reviewed all materials presented, considered the evidence presented, and issued a detailed eleven-page Decision in which it analyzed the sanctions issue. The trial court considered the purposes of the frivolous conduct statute – that is, to deter abuse of the judicial process and discourage egregious, overzealous, unjustifiable and frivolous actions – and analyzed all the evidence presented regarding the imposition of sanctions, both pro and con. It observed that there had been over six years of legal proceedings seeking sanctions. It noted the following: 180 Industrial initially sought attorney fees in the amount of $50,563.00 against Calypso under the contractual fee-shifting clause of the parties' agreement. Three months later 180 Industrial filed a second motion for sanctions seeking an indeterminate amount of attorney fees and costs. Finally, 180 Industrial filed a third

[Cite as *Calypso Asset Mgt., L.L.C. v. 180 Indus., L.L.C.*, 2024-Ohio-2339.]

Franklin County, Case No. 22AP-718                                                                                 14

request for sanctions in the amount of $298,000.00 against Brunner Quinn, Calypso, and

Alterra, jointly and severally, aptly comparing the sanctions portion of this case to Charles

Dickens' *Bleak House*.[1]

{¶15}  The trial court engaged in a detailed analysis in which it reconsidered the

award of sanctions in light of the CAM III decision, and thus complied with the second

prong of the CAM III court's instruction.

{¶16}  The trial court has broad discretion regarding the imposition of sanctions,

and we cannot say that the trial court acted arbitrarily, capriciously, or unconscionably in

its October 5, 2023 Decision on Sanctions Motions and November 2, 2023 Final

Judgment. To further perpetuate the *Bleak House*-like litigation in this case is simply not

warranted by the issues involved. This case must come to an end.

---

[1] *Bleak House* is a novel by Charles Dickens in which the fictional probate case of *Jarndyce v. Jarndyce* progresses through the English Court of Chancery at a glacial pace. Dickens introduces the case in Chapter I as follows:

> Jarndyce and Jarndyce drones on. This scarecrow of a suit has, over the course of time, become so complicated, that no man alive knows what it means. The parties to it understand it least, but it has been observed that no two Chancery lawyers can talk about it for five minutes without coming to a total disagreement as to all the premises. Innumerable children have been born into the cause; innumerable young people have married into it; innumerable old people have died out of it. Scores of persons have deliriously found themselves made parties in Jarndyce and Jarndyce without knowing how or why; whole families have inherited legendary hatreds with the suit. The little plaintiff or defendant who was promised a new rocking-horse when Jarndyce and Jarndyce should be settled has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of Chancellors has come in and gone out; the legions of bills in the suit have been transformed into mere bills of mortality; there are not three Jarndyces left upon the earth perhaps since old Tom Jarndyce in despair blew his brains out at a coffee-house in Chancery Lane; but Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless.

The fictional case has become synonymous with seemingly interminable legal proceedings.

## CONCLUSION

{¶22} Based upon the foregoing, we find that appellant/cross-appellee 180 Industrial's five assignments of error, as well as appellee/cross-appellant Calypso's sole assignment of error, are without merit and are therefore overruled. The decision of the Franklin County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Hoffman, P.J. concur.

Wise, John, J. concurs separately.

*Wise, J., concurring separately*

{¶23} I concur with the majority's disposition of Appellant's assignments of error. I write separately to address the trial court's reasoning that discussion of the conduct by the Brunner Quinn law firm "in a federal trial court decision, three appellate court decisions, and multiple decisions by this trial court" will "tarnish Brunner Quinn's reputation, and surely will discourage some potential clients from retaining them in the future" or that such is "a meaningful, though nonmonetary sanction." I am doubtful that the average citizen, when choosing a law firm, would come across such discussions in said decisions. Even if a potential client did discover those comments and decided not to retain Appellant's firm, I do not believe that should be a factor to be considered when imposing sanctions for frivolous conduct.

{¶24} Nevertheless, I concur in the disposition of this appeal based upon the broad discretion afforded to the trial court in the imposition of sanctions.