[Cite as *State ex rel. Stafford v. Carpenter*, 2022-Ohio-3848.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE ex rel., JOHN M. STAFFORD | : | |
| | : | |
| Relator-Appellant | : | Appellate Case No. 2022-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-605 |
| | : | |
| DAVID J. CARPENTER, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Respondents-Appellees | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of October, 2022.

. . . . . . . . . . .

JEREMY M. TOMB, Atty. Reg. No. 0079554 and HILLARY JAQUA, Atty. Reg. No. 0097633, 124 West Main Street, Troy, Ohio 45373
    Attorneys for Relator-Appellant

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953 and TABITHA JUSTICE, Atty. Reg. No. 0075440, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
    Attorneys for Respondents-Appellees

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} John M. Stafford appeals from the trial court's judgment entry sustaining in part and overruling in part his objections to a magistrate's decision and awarding him attorney fees of $48,562.50 plus court costs.

{¶ 2} Stafford contends the trial court erred in (1) reducing one of his attorney's hourly rate from $325 to $200 without supporting evidence, (2) reducing the hours for which he was entitled to an attorney-fee award by 30 percent without any justification, (3) denying attorney fees associated with a fee application, (4) failing to identify which fees were rejected, which were accepted, and why, (5) denying expert fees as costs, and (6) excluding two pages of billing summaries.

{¶ 3} Although most of Stafford's arguments lack merit, we agree that the trial court abused its discretion in reducing one attorney's hourly fee rate from $325 to $200. The largest reduction the record reasonably supported was a reduction to $250 per hour. Accordingly, the trial court's judgment will be reversed, and the case will be remanded for recalculation of the fee award.

## I. Factual and Procedural Background

{¶ 4} The present appeal stems from Stafford's September 2019 complaint alleging that the appellee-respondent Bellbrook-Sugarcreek School Board and its members had committed a number of violations of R.C. 121.22, the Open Meetings Act (OMA). The 33-page complaint contained 180 numbered paragraphs and 132 pages of exhibits. In their answer, the respondents admitted three of the alleged violations but denied several others.

{¶ 5} In December 2019, the respondents moved for a protective order, which the

trial court granted in part. The trial court prohibited Stafford from disseminating on social media any information or documents obtained solely through the discovery process. The trial court denied the respondents' request to prohibit Stafford from commenting about the case on social media.

{¶ 6} In June 2020, the respondents moved for judgment on the pleadings. That same month, Stafford filed a cross-motion for judgment on the pleadings. Upon review of the competing motions, the trial court found that the respondents had violated the OMA by engaging in email discussions about a school-levy post card and by entering into executive sessions for unauthorized reasons. The trial court issued a permanent injunction, assessed six $500 civil forfeitures, and set the matter for an attorney-fee hearing.

{¶ 7} Prior to the hearing, Stafford made an attorney-fee request of $224,506.72. A magistrate heard four days of testimony about attorney fees in January and February 2021. Stafford presented testimony from three of his attorneys, Jeremy Tomb, John Corey Colombo, and Derek Clinger. Finally, Stafford presented testimony from Erin Sussman, a fee expert employed by consulting and advisory firm Sterling Analytics. For their part, the respondents called Stafford to testify as on cross-examination. The respondents also presented testimony from attorney Bernard Wharton regarding the reasonableness of Stafford's fee request. Based on the testimony presented, the magistrate awarded Stafford attorney fees of $60,822.50 and court costs.

{¶ 8} Stafford objected to the magistrate's decision. He argued that the magistrate had erred in (1) finding 269.7 hours of fees recoverable rather than the total of 475.8

hours submitted, (2) improperly reducing attorney Clinger's hourly rate from $325 to $200, and (3) excluding Sussman's expert witness fee of $13,276.81. The respondents also objected to the magistrate's decision, arguing (1) that Stafford should not have been allowed to introduce summaries of billing entries and (2) that Stafford was not entitled to attorney fees to litigate discovery motions.

{¶ 9} The trial court resolved the competing objections in a January 19, 2022 Decision and Judgment Entry. The trial court's ruling included the following detailed factual findings, which are supported by the fee-hearing testimony:

Stafford was represented in this case by two law firms—McTigue & Colombo and Waite, Tomb & Eberly. In addition, Stafford was or is represented by these law firms in multiple additional matters.

In June, 2019, McTigue & Colombo was retained by Stafford to "look into two broad issues" as it related to the Bellbrook Sugarcreek School District; the first being potential misuse of public resources to promote a levy campaign and the second was a series of concerns about potential Open Meetings Act violations. (TR Vol II p. 235). McTigue & Colombo is located in Columbus, Ohio and has primary areas of specialty in matters related to election and campaign finance law, public records and open meetings. (TR Vol I p. 198). Stafford entered into a fee agreement with McTigue & Colombo wherein he agreed to pay a rate of $325 per hour for attorney time. (TR Vol I p. 200, 207). According to Cory Colombo, that is consistent with the rates charged by other firms in Columbus. (TR Vol I p.

207).

Attorney Derek Clinger submitted several public records requests to the school district over the summer of 2019 as an initial fact investigation into the two issues raised by Stafford. (TR Vol II p. 236). Among the responsive documents received in response to his public records requests, Clinger received a series of emails in which members of the school board were deliberating and discussing the contents of a postcard about the levy election; these emails formed the basis for one of the violations alleged (and prevailed upon) by Stafford and were attached to the complaint. (*Id.*). Additional documents received in the summer of 2019 in response to public records requests were also attached to the Complaint. At the time McTigue & Colombo was retained, Stafford already had the meeting minutes which formed the basis of violations pertaining to improper executive sessions. (TR Vol II p. 311-312).

Due to many moving parts and collateral issues, Waite, Tomb & Eberly, a law firm based in Troy, Ohio, was retained to join in representing Stafford in this case in or around September, 2019. Stafford has been a client of Attorney Wayne Waite's [sic] and later of Waite, Tomb & Eberly for more than ten years. During this time period, Waite, Tomb & Eberly was handling other general civil litigation for Stafford. (TR Vol I p. 49). Jeremy Tomb had prior experience litigating cases involving the Open Meetings Act and testified he has far more knowledge and experience in litigating Open

Meetings Act cases than the average practitioner. (TR Vol I p. 27). Stafford executed a fee agreement with Waite, Tomb & Eberly wherein he agreed to pay $250 per hour for attorney time and $125 per hour for paralegal time. (TR Vol I p. 29, Relator's Exhibit 1). While Waite, Tomb & Eberly had some work on the Complaint, McTigue & Colombo had primary responsibility for drafting the Complaint. (TR Vol I p. 35).

According to Tomb, Stafford had "about seven open billing entries" at the time of the attorney fee hearing for various matters (TR Vol I p. 59). The billing entries submitted by Waite, Tomb & Eberly include multiple entries for time spent on matters outside the scope of the Open Meetings Act litigation. By way of example, there are billing entries related to Stafford's pursuit of a civil protection order against Matthew Yoxtheimer. It is Stafford's position that the hours expended in pursuit of the civil protection order are part of this case because Respondents' counsel filed a motion to intervene and asked the Domestic Relations court to issue a protective order on discovery in the civil protection order case. (TR Vol I p. 60).

After the Complaint was filed on September 19, 2019, Clinger continued to make public records requests to the school district and to third party public entities. (TR Vol II p. 237). These third party public entities included the City of Bellbrook, Sugarcreek Township, a park district, Greene County Educational Services Center, and the Greene County Sheriff's Office. (TR Vol II p. 237-238). During his investigation, Clinger learned that

the Superintendent of the school district was sending emails related to the levy election to a group of 20-30 people, some of whom worked for these public entities. (*Id.*). The third party requests uncovered additional communications about the levy election. It was also discovered that one school board member was included in these email chains. (*Id.*). The email chains provided information about what people were hearing in the community about the levy as to its popularity or lack thereof. (*Id.*).

While this case was pending, Clinger represented Stafford in a pending action with the Ohio Elections Commission against a political action committee that was formed to support the school district's levy and against the school district superintendent "in his role as the effective campaign manager for that" political action committee. (TR Vol II p. 241). The attorneys who represent the Respondents herein also represent the superintendent in the Ohio Elections Commission matter. (*Id.*). Nearly identical motions for protective order were filed both in this case and the Ohio Elections Commission at roughly the same time. (*Id.*). In his billing entries, Clinger included references to the Ohio Elections Commission matter because both cases were "responding to the same arguments, same facts," and the same evidence. (*Id.*) Clinger testified there were some references to "try to make sure that our arguments in both forums are …consistent with each other, at least." (*Id.*)

Both law firms prepared a spreadsheet in support of the attorney fee

application filed herein. As McTigue & Colombo were hired to look into two separate issues—potential misuse of public resources to promote the passage of a school levy and violations of the Open Meetings Act—the law firm had multiple matters open in their law firm management software. (TR Vol II p. 258). Among the open billing matters was a completely separate matter for public records requests. (TR Vol II p. 276-277). Clinger testified that if a public records request had produced a document that it later turned out could be used to refute an argument made by Respondents during the pendency of this case, he would move the billing entry for that public records request into the billing statement for this case. (TR Vol II p. 296). According to Clinger, billing entries that the attorneys thought were relevant to this case were exported to an Excel spreadsheet and if the original description of work performed contained privileged attorney/client communications, the description was modified to protect those communication. (TR Vol II p. 259-260). Clinger provided the spreadsheets to Colombo for review and made any changes requested. (TR Vol II p. 261). ·

Waite, Tomb & Eberly maintained billing statements on a couple different software platforms. (TR Vol I p. 32). Tomb testified that billing entries "... that were relevant to the matters that were in the motion and to the statute and that fell within the structures [or] guidelines of previous cases" were entered for consideration in the fee application. (TR Vol I p. 33). Billing entries were entered sequentially "for the matters that made

sense" to be in the fee application. (*Id.*). Tomb also noted there were numerous individuals affiliated with the school board and friends of people affiliated with the school board that were "constantly peppering Mr. Stafford with collateral attacks, things that we had to deal with constantly, and then Mr. Stafford was billed for." (*Id.*). Tomb removed those items from the billing entries that weren't directly related to this case or that the attorneys didn't feel that the school made directly related to this case. (*Id.*). The spreadsheets from both law firms were then sent to Erin Sussman with Sterling Analytics for her review.

Sterling Analytics is a national/international consulting and advisory legal firm that reviews and validates legal invoices. (TR Vol II p. 322). Erin Sussman, a licensed attorney in the State of New York, had worked for Sterling Analytics for nearly nine years and was the Global Services Manager at the time of the hearing. (TR Vol II p. 323, 326). Sussman has co-written and teaches continuing legal education on the topic of ethical billing, drafted law review articles, and has spoken on panels on ethical and transparent billing. (TR Vol II p. 327). Sussman is not licensed in Ohio and had never testified as an expert in any case involving the Ohio Open Meetings Act. (TR Vol II p. 366).

Sterling Analytics was contacted in late August, 2020 and asked to review the legal invoices for the matter from McTigue & Colombo and Waite, Tomb & Eberly. (TR Vol II p. 329). Sterling Analytics did a line-by-line

analysis of the time slips for both law firms, immediately organized them, and looked at what the law films had already removed. (*Id.*). Sussman received the work product, major pleadings, and the motions filed in this case. She then worked through each of the invoices separately, going through each line and made notes where she saw things such as block billing, vague time entries, inconsistencies, clerical tasks, and attendance of multiple attorneys. (TR Vol II p. 329-330). Sussman testified that it was a collaborative process with both law firms and there were several rounds of revision to the billing entries. (TR Vol II p. 330). Sussman also compared the work of both law firms against each other and looked for meetings where attorneys from both law firms attended, work that was being performed, or emails that both law firms were on. In many of those instances, redundancies were removed. If two timekeepers billed for the same work or the same call, Sussman tried to make sure there was tangible work product and value brought to that task. (*Id.*). On Sussman's recommendation, Clinger's hourly rate was reduced to that of a paralegal for hours expended on doing public records requests and clerical tasks were completely removed from the billing. (TR Vol II p. 331-332). Additionally, billing entries related to travel were reduced to 50% of the timekeeper's hourly rate. (TR Vol II p. 341). Billing entries that revealed multiple attendance were evaluated individually to determine reasonableness of attendance. (TR Vol II p. 332). The vast majority of the time, only one timekeeper's billing entry

remained. (*Id.*). Sussman testified that there was an exercise in billing judgment made regarding every entry that billed for interoffice communications and communications between law firms; if the communication was strategic in nature and valuable or the result of a legal or factual development it was left in the invoice. (TR Vol II p. 358-360). After her review, Sussman identified multiple entries and recommended their removal, representing nearly 100 hours of billing and totaling 12% of the fees originally submitted. (TR Vol II p. 394, 449).

To familiarize herself with legal billing rates in Ohio, Sussman reviewed an annual Real Rate Report, which contains data across different benchmarks, such as years of experience, geographic area, types of litigation, and practice area, (TR Vol II p. 328). The Real Rate Report surveys attorney billing rates by different cities. In conducting her review, Sussman reviewed the rates billed in Columbus and Cincinnati; in the hearing, Sussman quoted the billing rates from Columbus and later testified those rates were consistent with rates that are charged in Dayton. (TR Vol II p. 374, 447). In her review, there was no instance where $250 per hour was an unreasonable hourly rate. (TR Vol II p. 374). When questioned how she reconciled the hourly rate of Wayne Waite, who is a very experienced local attorney with that of Derek Clinger, who had been licensed for just under 5 years at the time the complaint was filed, Sussman stated that was based on McTigue & Colombo being an "election law firm" which allowed

them to command higher rates for the niche practice area. (*Id.*). Sussman also pointed out Stafford's long relationship with Wayne Waite and her understanding that the hourly rate has always been $250 per hour, but that didn't mean that Wayne Waite wasn't entitled to a higher hourly rate, just that he charged much less than he could have given his experience. (TR Vol II p. 374-375).

Bernard Wharton is a licensed attorney in Ohio who was admitted to practice in 1994. (TR Vol II p. 588-589). Wharton is a shareholder with McCaslin, Imbus & McCaslin in Cincinnati, Ohio who has been practicing municipal, government, and school law since 1996 or 1997. While Wharton has represented various public bodies, public employees, and public agencies, he primarily represents school boards in litigation, (TR Vol III p. 590-591). Wharton also testified that he has "quite a lot" of experience in both seeking attorney fees and defending against claims for attorney fees. (TR Vol III p. 592). Wharton was retained by Respondents to review Stafford's request for attorney fees, (TR Vol III p. 595-596). To arrive at his ultimate opinion, Wharton spoke with Respondents' counsel, reviewed several of the pleadings filed in this case, conducted research into attorney fee awards and the Open Meetings Act, and reviewed the application for attorney fees with the attached billing summaries. (TR Vol III p. 597-598). In Wharton's view, this was an open and shut Open Meetings Act case given that Respondents had admitted some of the violations alleged in their

Answer. (TR Vol III p. 601). Wharton believed the next step after the Answer was filed was either an agreed injunction with an agreement to resolve the issue of forfeiture and attorney fees, or if an agreement couldn't be reached, filing a Motion for Judgment on the Pleadings by the Relator. (*Id.*). After reviewing the billing summaries and noting that the parties were more than a year into litigation without resolution, Wharton testified "there was a lot more going on than just an Open Meetings Act case." (*Id.*). Wharton went on to explain:

" ...it was…such a cut-and-dried case based on the Answer admitting violations, the fact that it took—I think by my count, it was seven months before [Stafford] even filed a Motion for Judgment on the Pleadings, plus all the extraneous issues that are clearly visible in the billing statement summaries provided by [Stafford] in their fee application tells me there was a lot of personal animus involved in this litigation between the parties, that there really is no good explanation under the law why all of this should have mushroomed to the size that it is when you had a fairly simple Open Meetings Act case that the Respondents admitted to in their Answer, and at that point, file your Motion for Judgment on the Pleadings, pocket the win and go home. There's no need to draw it out unless there are, you know, non-legal reasons for drawing it out." (TR Vol III p.

601-602).

Wharton also reviewed Erin Sussman's affidavit and, in his opinion, the affidavit did not address whether the hours billed were actually necessary to prosecuting Stafford's Open Meetings Act claim. (TR Vol III p. 604-605). In Wharton's opinion, there are five areas of legal work that are necessary to prosecute a case. First is pre-lawsuit investigation, which includes interviewing the client, gathering information that helps the attorney identify legal claims the client may have, and gathering what is need[ed] to draft a Complaint or what the attorney may need to refer to in a Complaint. Second is drafting the Complaint and reviewing any responsive pleadings. Third is engaging in the discovery process. Fourth is dispositive motion practice, if applicable. The fifth and final area is a trial on the merits. (TR Vol III p. 608-609). Wharton opined that 20 hours was a reasonable amount of time to spend on pre-lawsuit investigation, 25 hours was a reasonable amount of time to draft the Complaint and review the Answer, and 40 hours was a reasonable amount of time to expend on dispositive motions in this case. (TR Vol III p. 610-614). Wharton additionally testified that $250 per hour was a reasonable rate, but $330 per hour was too high for Greene County. (TR Vol III p. 606-607, 629). In sum, Wharton opined that a total of 85 hours at a rate of $250 per hour for a total attorney fee award of $21,250.00 was reasonable in this case. (TR Vol III p. 614).

Wharton specifically opined that there was no reasonable basis for

six attorneys and two paralegals to spend a total of 121.1 hours on the motion for protective order that was filed in this case. (TR Vol III p. 615-616). In fact, Wharton did not believe that any hours billed for the motion for protective order were reasonably related to the Open Meetings Act claims. (TR Vol III p. 619). Similarly, Wharton opined that hours billed in the civil stalking protection order case filed in the Greene County Domestic Relations Court were not reasonable and necessary to this case and that he would not consider litigation occurring outside the Open Meetings Act case as connected to the necessary resolution of the Open Meetings Act case. (TR Vol III p. 671-672).

(Footnotes omitted.) January 19, 2022 Decision and Judgment Entry at pg. 4-11.

{¶ 10} After making the foregoing findings, the trial court resolved several challenges by Stafford to the magistrate's reduction of recoverable attorney-fee hours. The trial court rejected most of Stafford's arguments. The trial court also rejected his challenge to the magistrate's reducing Clinger's hourly rate from $325 to $200. Finally, the trial court rejected Stafford's argument about recovering the expense of hiring fee-expert Sussman. The trial court held that the OMA did not permit recovery of this litigation expense. As for the respondents' objections, the trial court found no error in the magistrate's allowing Stafford to introduce billing summaries. The trial court also found no error in the magistrate's decision with regard to the recovery of fees related to the litigation of discovery motions.

{¶ 11} The trial court then conducted an independent review of the record and

concluded as follows:

This Court has thoroughly reviewed the record in this case, including the testimony adduced at the attorney fee hearing and the billing summaries submitted by counsel. As the parties are aware, this Court is tasked with determining the number of hours reasonably expended on this litigation and must multiply that by an attorney's reasonab[le] hourly rate. This Court cannot conclude that it is reasonable and necessary to expend 475.8 hours litigating a case that was entirely resolved with cross-motions for judgment on the pleadings, especially in light of the fact that Respondents filed an Answer wherein they admitted some of the violations alleged in the Complaint. The Court has calculated at least 87.2 hours where counsel were performing similar work to each other or were communicating or reviewing drafts unnecessarily. Moreover, the Court has identified 93.1 hours of work that was not reasonable or necessary to the instant litigation. Therefore, the Court finds that 180.3 hours should not be awarded as they represent hours incurred unnecessarily. Given the expertise and experience of each law firm, this Court questions the need for the participation of both firms in this case. Indeed, rather than this case benefiting from a divide and conquer approach, it is apparent the case was overstaffed. A comparison of the billing entries shows that for every significant stage of the litigation, there are a minimum of three and sometimes as many as six attorneys billing for time related to a particular

litigation task. It was not uncommon for multiple attorneys to bill for reviewing the same document. Of particular concern is the fact that six attorneys and two paralegals billed a total of 121.1 hours for work performed on the protective order requested by Respondents. Due to the fact that this case could have been resolved shortly after the Respondents' Answer was filed and before many of these hours were incurred, the Court finds that a reduction of 30% of the remaining 295.5 hours is appropriate. * * *

(Footnotes omitted.) January 19, 2022 Decision and Judgment Entry at pg. 22-23.

{¶ 12} The trial court proceeded to identify the reasonable hourly rate for each of Stafford's attorneys and paralegals and the reasonable number of hours of work performed by each. The trial court multiplied the reasonable hourly rates by the reasonable number of hours and arrived at a total fee award of $48,562.50. *Id.* at 23. Finally, the trial court found that "the relevant Prof. Cond.R. 1.5(a) factors" were subsumed within its calculation and declined to make any additional adjustment based on those factors. This appeal by Stafford followed.

## II. Analysis

{¶ 13} The attorney-fee issue is governed by R.C. 121.22(I)(2), which provides that "[i]f the court of common pleas issues an injunction pursuant to division (I)(1) of this section, the court shall order the public body that it enjoins to pay * * * reasonable attorney's fees." We review the trial court's attorney-fee award under R.C. 121.22(I) for an abuse of discretion. *Specht v. Finnegan*, 149 Ohio App.3d 201, 2002-Ohio-4660, 776 N.E.2d 564, ¶ 42 (6th Dist.) ("Both the Ohio Public Records Act and the Open Meeting

Act permit a trial court, in its discretion, to award a prevailing plaintiff attorney fees. * * * Matters within a court's discretion will not be disturbed on appeal absent an abuse of that discretion."). "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *AAAA Ents., Inc. v. River Place Community Urban Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *Id.* A decision is unreasonable if there is no sound reasoning process that would support it. *Id.*

## A. Reduction in Attorney Derek Clinger's Hourly Rate

{¶ 14} In the first of his six assignments of error, Stafford contends the trial court abused its discretion in reducing attorney Clinger's hourly rate from $325 to $200.

{¶ 15} Stafford claims the record contains no evidence to support the trial court's reduction. The respondents argue that Stafford failed to prove the reasonableness of Clinger's $325 per hour rate and that the record supported the trial court's reduction.

{¶ 16} In support of its decision, the trial court noted that Clinger had less than five years of experience as an attorney. Although fee expert Erin Sussman opined that Clinger's rate was reasonable, the trial court found that she had based her opinion on her identification of his firm, McTigue & Colombo, as an "election law firm," a niche practice that commanded higher rates, whereas the present lawsuit did not involve election law. The trial court also cited the respondent's expert, Bernard Wharton, who opined that $250 per hour was a reasonable rate charged by Waite, Tomb & Eberly, which was the other law firm representing Stafford in this matter. Finally, the trial court compared the attorneys'

rates and years of experience and determined that $200 per hour was a reasonable rate for Clinger's services.

{¶ 17} Upon review, we conclude that the record reasonably supported a reduction in Clinger's $325 hourly rate. But the trial court's reduction to $200 per hour was unsupported by the record and was unreasonable. At the fee hearing, Clinger testified that McTigue & Colombo practices "election law, political law, [and] state and local government law." Through his work with the firm, Clinger possessed special expertise and competence in OMA cases. Tr. Vol. II at 233-234. Clinger testified that he and the two partners involved in this case, Don McTigue and Corey Colombo, all billed Stafford at a rate of $325 per hour, which was well below the rate attorneys McTigue and Colombo normally charged. *Id.* at 282.

{¶ 18} Fee expert Sussman did refer to McTigue and Colombo at one point as a niche "election law firm." *Id.* at 374. Elsewhere in her testimony, however, Sussman recognized that the law firm had "extensive experience" in "government-type litigation," which "has higher rates." *Id.* at 348. Sussman testified that she had researched and collected information regarding customary hourly rates. She obtained much of this information from an industry publication known as the "Real Rate Report." *Id.* at 373. The report did not provide rates by county, so Sussman looked at rates for Cincinnati and Columbus. The Real Rate Report also provided her with data based on attorney experience. *Id.* In Sussman's opinion, "in no instance was $250 per hour an unreasonable hourly rate." *Id.* at 374. When questioned about experienced attorney Wayne Waite billing only $250 per hour for his work in this case, Sussman noted that he had a longstanding

relationship with Stafford and always had billed that rate as a courtesy. In Sussman's opinion, Waite reasonably could have charged more. *Id.* at 374-375. Sussman testified that the average rates for partners in Columbus were between $375 and $516 per hour, and the average rates for associates were between $235 and $370 per hour. *Id.* at 348. She opined that the rates for "government litigation" in particular were even higher. *Id.* at 348-349. She believed that the rates charged by both of Stafford's law firms in this case were "very reasonable," on the "low end," and consistent with rates charged in Dayton, Ohio. *Id.* at 347-349, 447-448.

{¶ 19} Attorney Tomb also testified at the fee hearing. He expressed familiarity with legal rates in southwest Ohio, including Dayton and Columbus. In Tomb's opinion, the $250 per hour charged to Stafford was "in the bottom third" of accepted attorney-fee rates. Tr. Vol. I at 65. He explained that this rate was based on Stafford's being a long-time client and what he traditionally had charged. *Id.* at 67. Tomb believed the $325 per hour rate McTigue & Colombo charged Stafford also was reasonable. *Id.* at 89.

{¶ 20} Attorney Colombo also testified about the fee issue. He explained that his firm specializes in "anything pertaining to elections and campaign finance" but also advertises "public records and open meetings" as a primary area of specialty. *Id.* at 198. His firm advises public and private clients on OMA issues. *Id.* at 198-199. Colombo opined that his firm's $325 per hour rate in this case was on the "low end" of what other Columbus firms would charge. *Id.* at 207. Colombo testified that his normal rate was $450 per hour but that he gave Stafford a reduced rate for various reasons. *Id.* at 207-208. Colombo testified that his partner, Don McTigue, typically charged $600 per hour. *Id.* at 208. With

regard to attorney Clinger's $325 rate in this case, Colombo testified that the firm usually bills Clinger at a rate of $375 per hour. *Id.* For someone right out of law school, Colombo stated that a rate in the "mid-200s is not uncommon." *Id.* at 209.

{¶ 21} Finally, attorney Bernard Wharton testified for the respondents about attorney-fee rates. Wharton, a partner at a law firm in Cincinnati, testified that his practice included defense work in OMA cases. He charged $275 per hour to review the fee issues in this case. His rate generally was between $250 and $350 per hour when contracting with a defense client. Tr. Vol. III at 597. When asked to identify a reasonable hourly rate for Stafford's "attorneys in this case," Wharton responded, "I think $250 an hour is a very reasonable rate for here in Greene County." *Id.* at 606-607. Wharton never opined specifically about a reasonable rate for attorney Clinger. His opinions about a reasonable rate were based solely on his experience as a practicing attorney. *Id.* at 633.

{¶ 22} In our view, it is impossible to review the foregoing testimony and reasonably conclude that a fair rate for Clinger's work in this case was $200 per hour. Although we cannot say that any reduction in Clinger's $325 per hour rate would be an abuse of discretion, not one witness provided testimony to support reducing his rate to $200 per hour. Clinger testified that the partners in his firm usually charged well above his $325 per hour rate. Fee expert Sussman testified that she could not identify any instance where $250 per hour would be unreasonable. Attorney Tomb testified that his firm's $250 rate for Stafford was low and was based on the firm's long-term relationship with him. Tomb believed McTigue & Columbo's $325 per hour rate was reasonable. Attorney Colombo testified that he normally billed Clinger out at a rate of $375 per hour.

Wharton, the respondents' own witness, testified broadly and without differentiation that $250 per hour was "very reasonable" for Greene County. This statement implied that a higher rate would be reasonable.[1]

{¶ 23} Based on the record before us, we hold that the trial court acted unreasonably, and thereby abused its discretion, in reducing Clinger's hourly rate from $325 to $200. In our view, the largest reduction the record reasonably supported was a reduction to $250 per hour. Accordingly, we sustain Stafford's first assignment of error insofar as the trial court erred in reducing Clinger's rate below $250 per hour.

## B. Thirty-Percent Reduction in Attorney-Fee Award

{¶ 24} In his second assignment of error, Stafford contends the trial court abused its discretion in making a 30-percent reduction to the number of hours for which he would be entitled to attorney fees.

{¶ 25} The essence of Stafford's argument is that the trial court engaged in impermissible "double counting of deductions" by (1) determining that 180.3 of the 475.8 billed hours were incurred unnecessarily and/or were unrelated to this case and then (2) applying an across-the-board 30 percent reduction to the remaining 295.5 hours. Stafford maintains that this type of double deduction is contrary to *Calypso Asset Mgt., LLC v. 180 Industrial, LLC*, 2021-Ohio-1171, 171 N.E.3d 790 (10th Dist.).

{¶ 26} Upon review, we find Stafford's argument to be without merit. "[T]here is a

---

[1] In *State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, the Ohio Supreme Court approved a $250 per hour fee for attorney Clinger. Although the trial court attempted to distinguish *Harris* on the basis that it was "more complex," was expedited, and was in Columbus, that case also took place in 2018 when Clinger was even less experienced. Although our decision herein is not based on *Harris*, we do find it worth noting the approval of his $250 rate.

strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award." *Phoenix Lighting Group, LLC v. Genlyte Thomas Group, LLC*, 160 Ohio St.3d 32, 2020-Ohio-1056, 153 N.E.3d 30, ¶ 19. Changes to the lodestar should be made only when a party proves that modification is warranted based on some factor not already subsumed within the lodestar calculation. *Id.* at ¶ 19.

**{¶ 27}** Courts traditionally modified the lodestar by considering things such as "the time and labor required, the novelty and difficulty of the questions involved, the skill needed to perform the legal service properly, the likelihood that the acceptance of the particular employment precluded other employment, the time limitations imposed by the client or by the circumstances, and the experience, reputation, and ability of the lawyer." *Id.* at ¶ 27. In *Phoenix Lighting*, the Ohio Supreme Court recognized, however, that such considerations typically are subsumed in the lodestar analysis itself. Therefore, they ordinarily provide no justification for departing from the lodestar figure. *Id.* at ¶ 17-20.

**{¶ 28}** In the present case, Stafford argues that the trial court improperly deducted 180.3 hours from his attorneys' bill and then made another 30-percent reduction to the remaining hours "for basically the same reasons" and without any justification for a further reduction after the lodestar calculation. *See, e.g.*, Appellant's Reply Brief at 4, 6.

**{¶ 29}** Having examined the record, we see no improper "double counting of deductions." The magistrate and the trial court appear to have rejected billing for time involving a municipal-court criminal case and a Greene County domestic-relations case. They also rejected billing for what they reasonably found to be excessive communication

between attorneys, attorneys reviewing each other's work, and reviewing social-media posts and other things unrelated to the OMA claims. When conducting its independent analysis to determine a lodestar figure, the trial court found that 180.3 hours should be excluded for excessive attorney communication/review and for other hours worked unnecessarily.

{¶ 30} As part of its lodestar analysis, the trial court also expressed concern that the case was overstaffed and that it lingered too long. The trial court noted that the case ultimately was decided on cross-motions for judgment on the pleadings, meaning that everything necessary to decide the case could be found in the complaint and the answer. The trial court expressed particular concern that Stafford's attorneys billed 121.1 hours for work on a protective order sought by the respondents. The trial court deemed an additional 30-percent reduction warranted based on the fact that much of the work performed—although it may have related in some way to the claims in this case—could have been avoided if Stafford had sought judgment on the pleading sooner before incurring additional hours.

{¶ 31} We cannot say the trial court abused its discretion in making the additional 30-percent reduction. That reduction did not appear to involve the same considerations that led the trial court to reduce the hours billed by 180.3. The trial court essentially found that Stafford unnecessarily prolonged the case and that certain hours billed, although perhaps related to the case, could have been avoided if Stafford had sought to end the case sooner. In this regard, we note that Stafford filed his complaint in September 2019, and the respondents filed their answer in November 2019. The parties then litigated a

motion for a protective order. In the end, the trial court refused to stop Stafford from making disparaging remarks about the respondents and their counsel on social media, but it prohibited him from disclosing information or documents obtained solely through discovery in this case. After the protective-order issue was resolved, the parties filed cross-motions for judgment on the pleadings in June 2020, nine months after Stafford filed his complaint and seven months after the respondents filed their answer. The trial court resolved the case on those cross-motions, issuing six $500 forfeitures and a permanent injunction against the respondents.

{¶ 32} Having reviewed the record, we conclude that the trial court did not act unreasonably in applying a 30-percent reduction to Stafford's attorneys' hours. Although the parties' dispute the extent to which Stafford was entitled to share information and make disparaging remarks on social media occurred in the context of this case, it had little if anything to do with the merits of his OMA claims and did nothing to advance the resolution of those claims. The parties certainly were entitled to ligate Stafford's right to express himself on social media as extensively as they desired, but the trial court acted within its discretion in refusing to order the respondents to pay for all 121.1 hours of legal work on a tangential issue that resulted in what fairly may be characterized as a split decision.

{¶ 33} In short, we are unconvinced that the trial court impermissibly double-counted deductions when it reduced Stafford's attorneys' hours billed for various reasons and then applied a further 30-percent reduction for a different reason. The record supported a finding that the case was over-litigated based on the presence of extraneous

or tangential issues arising from personal animus. Tr. Vol. III at 602, 621-623.

{¶ 34} Stafford's citation to the Tenth District's decision in *Calypso* fails to persuade us otherwise. In *Calypso*, 2021-Ohio-1171, 171 N.E.3d 790, the trial court reduced the number of hours billed as part of its lodestar analysis, which involved determining a reasonable hourly rate and multiplying that rate by the reasonable number of hours worked. After determining the lodestar figure, the trial court applied a 65-percent reduction to it based on essentially the same analysis and for the same reasons that led to the lodestar figure. Not surprisingly, the Tenth District found impermissible double counting of deductions. *Id.* at ¶ 39-43. Unlike *Calypso*, we conclude that different considerations and concerns justified the trial court's initial reduction in hours billed and its additional 30-percent reduction, all as part of its lodestar calculation. The second assignment of error is overruled.

### C. Attorney Fees for Fee Application and Hearing

{¶ 35} In his third assignment of error, Stafford contends the trial court abused its discretion in refusing to award him attorney fees for the time his attorneys spent in connection with his fee application and hearing.

{¶ 36} The trial court declined to award such fees on the authority of *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 76 Ohio St.3d 1218, 667 N.E.2d 1232 (1996). In that case, the Ohio Supreme Court found the relator not entitled to attorney fees for "fee application preparation." The *Plain Dealer* case arose under a prior version of Ohio's Public Records Act, R.C. 149.43(C). Stafford contends it has no applicability to his fee request under the OMA. He also argues that *Plain Dealer* is distinguishable insofar as

attorney-fee awards were discretionary when it was decided, whereas attorney-fee awards are mandatory under the OMA unless a statutory exception applies. In his reply brief, Stafford also asserts that *Plain Dealer* did not "announce any sort of principle that fees for fee application preparation are never recoverable under any circumstances."

{¶ 37} Upon review, we find no error in the trial court's denial of a fee award for the time Stafford's attorneys spent in connection with his fee application and hearing. The version of R.C. 149.43(C) in effect when *Plain Dealer* was decided provided for a judgment "that awards reasonable attorney's fees" to a prevailing party under the Public Records Act. The *Plain Dealer* court reviewed this language and held that attorney fees for "fee application preparation" were "not within the ambit of R.C. 149.43(C)." *Plain Dealer* at 1219. Contrary to Stafford's argument on appeal, the Ohio Supreme Court did not suggest that awarding attorney fees for fee application preparation was discretionary under the Public Records Act. To the contrary, it effectively announced a principle that such fees were never recoverable because they fell outside the ambit of R.C. 149.43(C).

{¶ 38} The following year, the Ohio Supreme Court extended *Plain Dealer* to a fee request under the OMA. In *White v. Clinton Cty. Bd. of Commrs.*, 77 Ohio St.3d 1267, 675 N.E.2d 471 (1997), the prevailing party sought attorney fees under both the OMA (R.C. 121.22) and the Public Records Act (R.C. 149.43). The version of R.C. 121.22(I)(2) in effect at the time provided for recovery of "all court costs and reasonable attorney's fees." Similarly, R.C. 149.43 authorized an award of reasonable attorney's fees. The Ohio Supreme Court found the appellant entitled to certain costs and attorney fees, but it denied recovery "for preparation of the fee application." *Id.* at 1268. Although the *White*

court cited *Plain Dealer*, which had involved a fee request under the Public Records Act, we find it noteworthy that the appellant in *While* had sought the fees under both the OMA and the Public Records Act.

{¶ 39} The Ohio Supreme Court's refusal to award attorney fees in connection with the fee applications in *Plain Dealer* and *White* supports the trial court's decision in Stafford's case. As in those cases, the version of R.C. 121.22 in effect at the time of Stafford's case authorized an award of "reasonable attorney's fees" to a prevailing party. The Ohio Supreme Court held attorney fees for fee applications did not come within the scope of the fee provisions of the Public Records Act or the OMA.[2] Stafford points out that an award of attorney fees was discretionary under the version of R.C. 149.43 in effect at the time of *Plain Dealer*, whereas an attorney-fee award was mandatory in his OMA case. Whether an award of any attorney fees was mandatory or discretionary, however, does not alter the fact that fees for time spent in connection with Stafford's fee application and hearing fell outside the ambit of R.C. 121.22. Accordingly, the third assignment of error is overruled.

## D. Sufficiency of Trial Court's Explanation

{¶ 40} In his fourth assignment of error, Stafford contends the trial court abused its discretion in failing to state with sufficient particularity which claimed hours of attorney work it was accepting, which it was rejecting, and why.

---

[2] We note that the General Assembly subsequently amended the Public Records Act to provide that reasonable attorney fees "shall include reasonable fees incurred to produce proof of the reasonableness and amount of the fees and to otherwise litigate entitlement to the fees." R.C. 149.43(C) (effective September 29, 2007). No similar amendment has been made to the language of the OMA.

{¶ 41} Stafford argues that neither the magistrate nor the trial court provided a reasonably specific explanation for the fee-award determination and the reductions that were made. Although the magistrate did not individually address each of the hundreds of billing entries, the magistrate did identify the types of entries that were excluded and stated why. March 18, 2021 Magistrate's Decision at 9-10. The trial court provided an even more detailed review. In its 24-page ruling, the trial court addressed each of the specific types of exclusions challenged by Stafford. January 19, 2022 Decision and Judgment Entry at 13-18. The trial court went further and specifically examined roughly 250 individual billing entries and explained why they were included or excluded. *Id*. at 15-17.

{¶ 42} In his assignment of error, Stafford disputes the trial court's analysis of a handful of these entries. He has not persuaded us, however, that the trial court failed to state the basis for its decision with sufficient particularity. As the respondents note, this court recently affirmed a much more succinct attorney-fee award in *Alegre, Inc. v. Hyde Component Sales, Inc.*, 2d Dist. Montgomery No. 29093, 2022-Ohio-542, ¶ 32 (finding no abuse of discretion in the trial court's summary determination to award 30 percent of the requested fees, while noting that "the court below could have been more precise in its explanation of how it reached $110,000"). The fourth assignment of error is overruled.

### E. Stafford's Expert Witness' Fees

{¶ 43} In his fifth assignment of error, Stafford contends the trial court abused its discretion in failing to include an expert's fee as part of the cost of this litigation. His argument concerns the expense he incurred to have expert witness Erin Sussman review

the fee application and testify at the fee hearing. Although the OMA is silent regarding expert fees, Stafford argues that the statute must be construed liberally to allow recovery of such fees as costs.

{¶ 44} Upon review, we see no error in the trial court's refusal to include Sussman's fee in its award. As set forth above, R.C. 121.22(I) provides for the recovery of "court costs" and "reasonable attorney's fees." The litigation expense Stafford incurred to hire Sussman was not a court cost or an attorney fee. *White* at 1268, citing *Plain Dealer* at 1219.

{¶ 45} In opposition to our conclusion, Stafford cites workers' compensation cases. *See Moore v. Gen. Motors Corp.*, 18 Ohio St.3d 259, 480 N.E.2d 1101 (1985); *Kilgore v. Chrysler Corp.*, 92 Ohio St.3d 184, 749 N.E.2d 267 (2001). But the statutes at issue in those cases were broader and by their own terms reasonably encompassed expert-witness fees. In *Moore*, the Ohio Supreme Court explained:

> The legislature pursuant to R.C. 4123.519 has demonstrated its intent that a claimant's recovery shall not be dissipated by reasonable litigation expenses connected with the preparation and presentation of an appeal pursuant to R.C. 4123.519. Therefore, we find that the legislature intended as a matter of public policy to include as part of the "cost of any legal proceedings authorized by this section" the witness fee paid to an expert in the preparation and giving of a deposition for presentation and use in an R.C. 4123.519 appeal. * * *

*Moore* at 262; *see also Kilgore* at 187 (observing that "the traditional dichotomy between

'costs' and 'expenses' in civil cases * * * is not directly applicable in the workers' compensation area").

{¶ 46} In our view, the *Plain Dealer* and *White* cases are more applicable than workers' compensation cases involving different statutory language. Because the litigation expense Stafford incurred to have Sussman review his fee application and testify at the fee hearing does not qualify as a "court cost," we overrule his fifth assignment of error.

### F. Exclusion of Portion of Billing Summary

{¶ 47} In his sixth assignment of error, Stafford contends the trial court abused its discretion in excluding two pages from McTigue & Colombo's billing summaries.

{¶ 48} The two pages at issue are pre-complaint time entries involving public-record requests to the respondents and others, telephone calls and emails related to the public-record requests, and review of materials obtained pursuant to the public-record requests. The magistrate denied recovery for the pre-suit billing entries, finding it "impossible to ascertain what the subject of the public records requests and discussions with Stafford were." March 18, 2021 Magistrate's Decision at fn. 11. On review, the trial court examined the disputed two pages in light of the hearing testimony and found as follows:

> This Court has reviewed the transcripts of testimony in this case and notes that Clinger did identify eight public records requests that were issued on July 12, 2019 as the requests that produced the email communications that formed the basis of one of the Open Meetings Act violations in this

case. Thus, the hours billed for those public records requests were reasonable and necessary to the instant action. That said, the remaining billing entries contained in the first two pages of the McTigue and Colombo billing summary contain insufficient detail for this court to discern which public records requests were sent and which discussions with Stafford and among counsel were had in furtherance of this case as opposed to other matters. While Clinger testified that the public records requests issued to third-parties produced additional email communications about the levy election, the testimony established that the only school officials who were on the email chains were the Superintendent and a single Respondent herein. Since the third-party email chains do not involve a majority of the school board members, they cannot constitute violations of the Open Meetings Act. Therefore, the hours billed for the third-party public records requests were not reasonable and necessary to the instant litigation. In addition, this Court finds that the billing entries related to what was referred to as the "threatening letter" contained on page two of the McTigue and Colombo billing summary reflect hours billed that were not reasonable and necessary to this case, as the "threatening letter" is wholly separate from this litigation.

Based on the foregoing, the Court modifies the Magistrate's decision to include 1.5 hours billed by Derek Clinger to finalize the eight public records requests identified above and overrules the remainder of Stafford's

objection herein.

January 19, 2022 Decision and Judgment Entry at 18.

**{¶ 49}** On appeal, Stafford contends pre-lawsuit public-record requests were necessary to investigate and uncover the OMA violations underlying his complaint against the respondents. He explains that the first two pages of billing summaries reflect efforts made to obtain information for the lawsuit. He insists that it was necessary to "cast a wide net" to uncover information related to the claims in his complaint. The fact remains, however, that the trial court found itself largely unable to determine which public-record requests and subsequent actions actually involved the OMA violations at issue in this case. Contrary to Stafford's argument, we are unpersuaded that the trial court was obligated to compel the respondents to pay attorney fees for all of his attempts to uncover OMA violations, regardless of the success or failure of those efforts.

**{¶ 50}** The record reflects a reasoned analysis by the trial court of the first two pages of McTigue & Colombo's billing summaries. We see no abuse of discretion. The sixth assignment of error is overruled.

### III. Conclusion

**{¶ 51}** Having sustained Stafford's first assignment of error, we reverse the trial court's January 19, 2022 judgment awarding him attorney fees in the amount of $48,562.50 plus court costs. The case is remanded for the trial court to recalculate its attorney-fee award applying a rate of $250 per hour for attorney Derek Clinger.

. . . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.


Copies sent to:

Jeremy M. Tomb
Hillary Jaqua
Nicholas E. Subashi
Tabitha Justice
Hon. Adolfo A. Tornichio